[This opinion has been published in *Ohio Official Reports* at 78 Ohio St.3d 548.]

THE STATE OF OHIO, APPELLEE, *v.* GILLARD, APPELLANT.

[Cite as *State v. Gillard*, 1997-Ohio-183.]

*Criminal law—Aggravated murder—Death penalty—Trial errors that are either harmless or waived by effective counsel are not mitigating factors under R.C. 2929.04(B)(7)—Death penalty upheld after remand for limited purpose of evidentiary hearing on possible conflict of interest—Supreme Court retains jurisdiction.*

Trial errors that are either harmless or waived by effective counsel are not mitigating factors under R.C. 2929.04(B)(7).

(No. 96-221—Submitted January 21, 1997—Decided June 11, 1997.)

APPEAL from the Court of Appeals for Stark County, Nos. CA-6701 and 95CA0257.

————————————

{¶ 1} We have considered various issues in this capital case on two prior occasions and provided detailed accounts of its facts and procedural history at each opportunity. *State v. Gillard* (1988), 40 Ohio St.3d 226, 533 N.E.2d 272 ("*Gillard I"*), and *State v. Gillard* (1992), 64 Ohio St.3d 304, 595 N.E.2d 878 ("*Gillard II"*). For that reason, we provide only a brief procedural history here.

{¶ 2} In *Gillard I,* we reinstated appellant's convictions for the aggravated murders of Denise Maxwell and Leroy Ensign, and for the attempted aggravated murder of Ronnie W. Postlethwaite. 40 Ohio St. 3d at 235, 533 N.E.2d at 281-282. We also remanded the cause to the court of appeals to conduct its independent review of the appropriateness and proportionality of appellant's death sentence. Thereafter, the court of appeals affirmed the death sentence, and appellant again appealed to this court. See *State v. Gillard* (June 25, 1990), Stark App. No. CA-6701, unreported.

**{¶ 3}** In *Gillard II*, we remanded the cause to the trial court with instructions to conduct a hearing to determine whether an actual conflict of interest existed in trial counsel's representation of appellant. 64 Ohio St.3d at 312, 595 N.E.2d at 883. We also ordered the trial court to conduct a new trial if it found that an actual conflict existed. After a hearing, the trial court determined that there was no conflict of interest and returned the matter to this court pursuant to our original remand. Accordingly, we resume our review of this cause.

_____

*Robert D. Horowitz*, Stark County Prosecuting Attorney, and *Ronald Mark Caldwell*, Assistant Prosecuting Attorney, for appellee.

*David H. Bodiker*, Ohio Public Defender, *Michael J. Benza* and *Cynthia Yost*, Assistant State Public Defenders, for appellant.

_____

**COOK, J.**

**{¶ 4}** Given our determination in *Gillard II,* the tasks remaining in this case include a review of the issue of the alleged conflict of interest of appellant's trial counsel and our own independent review of the appropriateness and proportionality of the death sentences pursuant to R.C. 2929.05(A). Although appellant challenges his convictions and sentence, these propositions of law present issues beyond the scope of the *Gillard II* remand and, as such, are beyond the scope of our current review. Further, appellant failed to raise these issues in his 1988 cross-appeal when we affirmed his convictions and remanded the cause to the court of appeals. See *Gillard I, supra.* These new issues are barred by the doctrine of *res judicata* and we overrule propositions of law six, nine through thirteen, and fifteen without further consideration. *State v. D'Ambrosio* (1995), 73 Ohio St.3d 141, 143, 652 N.E.2d 710, 713.

**{¶ 5}** Appellant does raise additional matters that he has not had the prior opportunity to argue and which may not be barred by the doctrine of *res judicata*.

Thus, although they are technically beyond the scope of the remand, we will consider appellant's challenges to the 1990 "resentencing" hearing of the trial court and to the effectiveness of his appellate counsel.

{¶ 6} After the court of appeals affirmed the original death sentence, the appellate court issued a special mandate directing the common pleas court to "carry this judgment into execution." *State v. Gillard* (June 25, 1990), Stark App. No. CA-6701, unreported. The common pleas court, in response to the mandate, held a hearing to set a new execution date, *not* to "resentence" appellant. At the hearing, the trial court had no authority to reopen the question of whether the appellant should receive the death sentence, and could not receive evidence or reweigh the aggravating circumstances against the mitigating factors. Accordingly, we overrule appellant's fourteenth proposition of law.

{¶ 7} In his seventh proposition of law, appellant claims his appellate counsel in *Gillard I* was ineffective because only two issues were raised in his cross-appeal. *Gillard I*, however, was appellant's second appeal as of right (notably, a *claimed* appeal as of right). As such, appellant was not entitled to effective assistance of appellate counsel. *State v. Buell* (1994), 70 Ohio St.3d 1211, 1212, 639 N.E.2d 110.

{¶ 8} In this same proposition, appellant also argues that he received ineffective assistance of appellate counsel in the court of appeals' proceedings on remand from *Gillard I* because counsel did not attempt to raise issues beyond the scope of the remand. Because counsel appropriately focused on the issues before the court on remand—that court's independent review of the sentence—we overrule appellant's seventh proposition of law.[1]

---

1. Appellant makes a related argument in his nineteenth proposition of law that he was denied "meaningful" appellate review because the court of appeals neither considered the mitigating factors nor independently reweighed the aggravating circumstances and mitigating factors. This court's independent review, however, will correct any errors by the court of appeals. *State v. Clark* (1988), 38 Ohio St.3d 252, 263, 527 N.E.2d 844, 856.

{¶ 9} We have previously held that R.C. 2929.05 does not require this court to address and discuss, in opinion form, each and every proposition of law raised in a capital case on appeal from the court of appeals.  See, *e.g., State v. Davis* (1996), 76 Ohio St.3d 107, 110, 666 N.E.2d 1099, 1104; *State v. Allen* (1995), 73 Ohio St.3d 626, 628, 653 N.E.2d 675, 680.  We thus address here only those issues that warrant discussion.  For the reasons that follow, we find no actual conflict of interest in trial counsel's representation of appellant and affirm the judgment of the court of appeals as to both the convictions and sentence.

I

CONFLICT OF INTEREST

{¶ 10} Appellant contends that his trial counsel, Louis Martinez, labored under an actual conflict of interest because Martinez also represented William A. Gillard, appellant's brother.  Martinez represented William when he pled no contest to and was found guilty of a misdemeanor for illegally discharging a firearm at the crime scene immediately prior to the murders.   William was also under investigation by the grand jury during appellant's trial for his involvement in the murders.

{¶ 11} At our direction, the trial court conducted a hearing to determine whether Martinez represented appellant under the cloud of an actual conflict of interest.  Appellant presented testimony from three witnesses: Craig Chessler, co-counsel for appellant at trial; Don Wuertz, an investigator employed by Martinez during appellant's trial; and Charles Kirkwood, a retired professor of law.  Martinez was unable to testify at the remand hearing, having suffered a stroke sometime after the trial.

{¶ 12} The trial court concluded that Martinez did not represent appellant under an actual conflict of interest.  Based on the limited nature of the remand by this court,  the court of appeals dismissed appellant's appeal of the trial court's

4

findings for lack of jurisdiction. *State v. Gillard* (Dec. 13, 1995), Stark App. No. 95CA0257, unreported.

## A. Procedural Challenges

{¶ 13} Appellant initially challenges this court's exercise of jurisdiction over the trial court's proceedings on remand absent the court of appeals' intermediate review. Appellant argues in his first proposition of law that the court of appeals, not this court, has jurisdiction over direct appeals from common pleas courts pursuant to Section 3(B)(2), Article IV of the Ohio Constitution.[2] In this

---

2. Section 3(B)(2), Article IV of the Ohio Constitution states:
"Courts of appeals shall have such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district and shall have such appellate jurisdiction as may be provided by law to review and affirm, modify, or reverse final orders or actions of administrative officers or agencies."
APPENDIX
"Proposition of Law No. I [:] A decision by a court of common pleas after the remand by an appellate court is reviewable by the court of appeals.
"Proposition of Law No. II [:] The failure of a trial court to hold a hearing into the conflict of interest mandates reversal of the convictions and sentences.
"Proposition of Law No. III [:] Joint representation of a defendant and a potential defendant constituted an actual conflict of interest mandating reversal of the conviction and sentence.
"Proposition of Law No. IV [:] When a defense attorney labors under an actual conflict of interest the error is a fundamental and structural error which is not susceptible [of] harmless error review.
"Proposition of Law No. V [:] When a hearing court fails to review the entire record on the trial, the factual conclusions of the trial court are unreliable and not binding on the reviewing court.
"Proposition of Law No. VI [:] A capital defendant's convictions and sentences are unreliable and inappropriate when he is denied the effective assistance of counsel, in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 2, 9, 10, and 16 of the Ohio Constitution.
"Proposition of Law No. VII [:] Appellant Gillard was denied the effective assistance of appellate counsel in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution.
"Proposition of Law No. VIII [:] When counsel fails to investigate and present mitigating evidence and labors under a conflict of interest, the defendant is denied effective assistance of counsel in violation of his constitutional rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 2, 9, 10, and 16 of the Ohio Constitution.
"Proposition of Law No. IX[:] The prosecutor's misconduct in the trial phase of John Gillard's capital case denied Mr. Gillard his due process right to a fair trial.

case, however, the decision of the trial court on the conflict issue is not returned to this court as "an appeal" from the trial court. This court never relinquished the

---

"Proposition of Law No. X[:] When the appearance of judicial bias and impropriety are present a defendant is denied a fair trial, in violation of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 2, 5, 9, and 16 of the Ohio Constitution and Canon 3 of the Code of Judicial Conduct.

"Proposition of Law No. XI[:] The trial court procedures at all stages of appellant Gillard's trial violated his rights of due process and to a reliable determination of the appropriateness of the death sentence in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 9, 10 and 16, Article I, of the Ohio Constitution.

"Proposition of Law No. XII[:] When a trial court releases grand jury transcripts to the state to aid in preparation of an appeal, the court must release the transcripts to the defense and make the transcripts a part of the record on appeal.

"Proposition of Law No. XIII[:] The evidence in appellant Gillard's case was not sufficient to support his convictions under the Eighth and Fourteenth Amendments to the United States Constitution and Sections 9 and 16, Article I of the Ohio Constitution.

"Proposition of Law No. XIV[:] Appellant Gillard's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Sections 9, 10, and 16[,] Article I of the Ohio Constitution were violated when the trial court reimposed the death penalty at the resentencing hearing.

"Proposition of Law No. XV[:] The death sentence is inappropriate and unreliable when *voir dire* errors deny a capital defendant his right to a fair trial and a fair jury, in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 2, 5, 9, 10, and 16 of the Ohio Constitution.

"Proposition of Law No. XVI[:] The death sentence imposed on appellant Gillard is unreliable, inappropriate and violates the Eighth and Fourteenth Amendments to the United States Constitution, Section[s] 9 and 16, Article I of the Ohio Constitution and O.R.C. Sec. 2929.05.

"Proposition of Law No. XVII[:] Appellant Gillard's death sentence was disproportionate and violated the Fifth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 9 and 16, Article I of the Ohio Constitution.

"Proposition of Law No. XVIII[:] A capital defendant's death sentence is unreliable and inappropriate when he is denied the procedural safeguard of a meaningful, independent review by the trial court under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution, Sections 9 and 16, Article I of the Ohio Constitution, O.R.C. Sec. 2929.03(F) and O.R.C. Sec. 2929.05.

"Proposition of Law No. XIX[:] A capital defendant's death sentence is unreliable and inappropriate when he is denied the procedural safeguard of a meaningful, independent review by the appellate court under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution, Sections 9 and 16, Article I of the Ohio Constitution, O.R.C. Sec. 2929.03(F) and O.R.C. Sec. 2929.05.

"Proposition of Law XX[:] The Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 10, and 16, Article I of the Ohio Constitution establish requirements for a valid death penalty scheme. Ohio Revised Code Sections 2903.01, 2929.02, 2929.021, 2929.022, 2929.023, 2929.03, 2929.04 and 2929.05, Ohio's statutory provisions governing the imposition of the death penalty, do not meet the prescribed constitutional requirements and are unconstitutional, both on their face and as applied to appellant Gillard."

jurisdiction acquired in *Gillard II.* By instructing the trial court in *Gillard II* to "*return* this cause" to this court, we retained our jurisdiction and remanded only the conflict issue for the limited purpose of conducting an evidentiary hearing. See, also, *State v. Berry* (1996), 77 Ohio St.3d 1439, 671 N.E.2d 1279 (remand to trial court for competency hearing while retaining jurisdiction over matter); see, generally, 16 Wright, Miller & Cooper, Federal Practice & Procedure (1996) 700, Section 3937.1 (describing and approving federal courts' use of remand-while-retaining-jurisdiction procedural device). Because appellant had no right to appeal the conflict issue to the court of appeals, we overrule his first proposition of law.

{¶ 14} In his second proposition of law, appellant challenges the remedy we fashioned in *Gillard II* for the trial court's failure to inquire into the possible conflict of interest during the original trial. Appellant contends that a new trial is the sole remedy for the trial court's failure to conduct an inquiry into a potential conflict of interest at trial after the trial court has been alerted to one.

{¶ 15} In support of his argument, appellant cites *Wood v. Georgia* (1981), 450 U.S. 261, 272, 101 S.Ct. 1097, 1104, 67 L.Ed.2d 220, 231, fn. 18, where the court stated that the United States Constitution "*mandates* a reversal when the trial court has failed to make an inquiry even though it 'knows or reasonably should know that a particular conflict exists.'" (Emphasis added.) In *Wood,* the trial court failed to inquire into a possible conflict of interest after the court was alerted to its potential during a probation revocation hearing. Nonetheless, the *Wood* court ordered the trial court to "hold a hearing to determine whether the conflict of interest * * * actually existed * * *," rather than a new revocation hearing. Only "[i]f the court finds that an actual conflict of interest existed" was it to grant a new revocation hearing. 450 U.S. at 273-274, 101 S.Ct. at 1104, 67 L.Ed.2d at 231.

{¶ 16} Additionally, the United States Constitution is violated by an actual conflict of interest, not a possible one. *Cuyler v. Sullivan* (1980), 446 U.S. 335, 348-350, 100 S.Ct. 1708, 1718-1719, 64 L.Ed.2d 333, 346-347; *State v. Manross*

(1988), 40 Ohio St.3d 180, 182, 532 N.E.2d 735, 738. When a possible conflict of interest exists, a defendant is entitled only to an inquiry by the trial court. The trial court's failure to conduct the inquiry, however, does not transform a possible conflict into an actual one. A retrial for failing to inquire into a possible conflict of interest is premature. Rather, reversal is mandated only if an actual conflict is found. See *Brien v. United States* (C.A.1, 1982), 695 F.2d 10, 15, fn. 10; *United States v. Winkle* (C.A.10, 1983), 722 F.2d 605, 611-612; *Bonin v. Vasquez* (D.C.Cal. 1992), 807 F.Supp. 589, 606, fn. 16. Appellant's second proposition of law is overruled.

{¶ 17} In its opinion on the remand, the trial court indicated that it reviewed only parts of the original trial record. Appellant argues in his fifth proposition of law that, as a result, the trial court's factual findings are unreliable and that we should remand the issue for a complete review of the record. The facts surrounding the alleged conflict of interest were largely undisputed and the trial court did not need to review the entire trial record to properly reach its findings. In any event, whether an actual conflict of interest existed is a mixed question of law and fact, subject to *de novo* review on appeal. *Cuyler*, 446 U.S. at 342, 100 S.Ct. at 1715, 64 L.Ed.2d at 342; *Winkler v. Keane* (C.A.2, 1993), 7 F.3d 304, 308. Because the trial court is in a far better position to judge the credibility of the witnesses testifying at the remand hearing, its findings should be accepted unless clearly erroneous. *United States v. Gambino* (C.A.3, 1988), 864 F.2d 1064, 1071, fn. 3. We find no clear errors in the trial judge's findings. Appellant's fifth proposition of law is overruled.

B. Merits

**{¶ 18}** In his third and eighth propositions of law, appellant challenges the trial court's finding on remand that no actual conflict existed in Martinez's representation of appellant. In order to establish a Sixth Amendment violation due to a conflict of interest, a defendant who failed to object at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. *Cuyler*, 446 U.S. at 348, 100 S.Ct. at 1718, 64 L.Ed.2d at 346-347.

**{¶ 19}** A *possible* conflict of interest exists where the "'interests of the defendants *may* diverge at some point so as to place the attorney under inconsistent duties.'" (Emphasis added.) *State v. Dillon* (1995), 74 Ohio St.3d 166, 168, 657 N.E.2d 273, 275-276, quoting *Cuyler,* 446 U.S. at 356, 100 S.Ct. at 1722, 64 L.Ed.2d at 351-352, fn. 3. It follows, then, that an *actual* conflict of interest exists if, "'during the course of the representation, the defendants' interests *do* diverge with respect to a material factual or legal issue or to a course of action.'" (Emphasis added.) *Id.* at 169, 657 N.E.2d at 276, quoting *Cuyler,* 446 U.S. at 356, 100 S.Ct. at 1722, 64 L.Ed.2d at 351-352, fn. 3; see, also, *Winkler*, 7 F.3d at 307. Indeed, we have said that a lawyer represents conflicting interests "when, on behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose." *Manross*, 40 Ohio St.3d at 182, 532 N.E.2d at 738.

**{¶ 20}** Appellant contends that an actual conflict of interest in Martinez's representation of him and his brother, William, is apparent during appellant's trial because Martinez failed to use the evidence linking William to the murders to argue that William, and not appellant, committed them. Appellant cites the following evidence adduced at trial: William, armed with brass knuckles, attended a New Year's Eve party at the home of Tim Hendricks. William was evicted from the party after he and another partygoer, Leroy Ensign, got into a bloody fight. William returned to the Hendricks home and fired a gun outside the house minutes before the murders occurred there. William provided a false name to the police when he

was apprehended several hours after the murders. When he was apprehended, William's shirt had blood stains that matched one victim, and his jacket had blood stains that could not be excluded as coming from another victim. William also possessed a bullet matching those found at the crime scene.

{¶ 21} To demonstrate an actual conflict of interest based upon what an attorney has failed to do, appellant must show two elements. First, he must demonstrate that "some plausible alternative defense strategy or tactic might have been pursued. He need not show that the alternative defense would necessarily have been successful if it had been used, but that it possessed sufficient substance to be a viable alternative. Second, he must establish that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *United States v. Fahey* (C.A.1, 1985), 769 F.2d 829, 836; see, also, *Gambino*, 864 F.2d at 1070-1071; *Winkler,* 7 F.3d at 309.

{¶ 22} Martinez, appellant maintains, could not argue that William committed the murders as part of appellant's defense due to Martinez's duty to protect William from future prosecution. Martinez' sole defense strategy was an alibi defense. To this end, appellant and three other witnesses testified that appellant was at a New Year's Eve party at the home of friends at the time of the murders. Martinez also called William as a defense witness. William denied firing a gun at the crime scene immediately prior to the murders and denied any involvement in the murders. He also denied speaking to or seeing appellant after William's fight with Ensign.

{¶ 23} At the remand hearing, Professor Kirkwood testified that the viable defense Martinez should, but could not, have presented was an alibi *and* an alternate suspect defense. Under this theory, instead of solely arguing an alibi defense, Martinez should have also argued that William committed the murders. In Kirkwood's opinion, the circumstantial evidence pointing to William's involvement made the alternate suspect a viable, plausible defense.

**{¶ 24}** At the remand hearing, appellant also introduced a plea agreement between the state and William dated two and one-half years after appellant's trial while William was represented by counsel other than Martinez. According to the agreement, William pled guilty to the aggravated burglary of the Hendricks home, agreed to testify against appellant if appellant were to be retried and, in exchange, received probation for the offense. Appellant argues that the plea agreement demonstrates that the interests of appellant and his brother differed so that any attorney would have used William's involvement to exculpate appellant.

**{¶ 25}** We disagree. We cannot say either that the alternative defense was viable or that Martinez's failure to argue, on behalf of appellant, that William was the "real killer" was due to Martinez's obligations to William. Although William may have been a plausible suspect, he was not an *alternative* suspect. Evidence of William's involvement was not inconsistent with appellant's guilt, *i.e.*, none of the evidence implicating William either negated appellant's involvement or strengthened his alibi.

**{¶ 26}** To the contrary, the state claimed that *both* appellant and his brother were involved in the murders. For example, the state presented evidence that William's fight with Ensign provided appellant with the motive to kill Ensign. Additionally, the state called Ronald Webb, who testified that appellant confessed to him that "I pulled the trigger, and my brother's taking the fall."

**{¶ 27}** Moreover, both appellant *and* his brother were positively identified by the attempted-murder victim, Ronnie Postlethwaite. Postlethwaite testified that he saw William fire the shots outside Hendricks's house. Twenty minutes later, Postlethwaite heard more than one person enter the house and then heard a shot fired in the kitchen. Soon after, Postlethwaite testified, appellant grabbed his hair from behind, turned his head around and shot him in the temple. Postlethwaite then saw appellant shoot his fiancee, Denise Maxwell, in the head while she slept on the couch. While he lay wounded at the scene, Postlethwaite identified appellant to the

police as the shooter. Naturally, Postlethwaite's identification testimony and his credibility were crucial to the interests of *both* appellant and his brother.

{¶ 28} If Martinez emphasized William's involvement in the murders, he would have conceded that the state's theory was in part correct. For example, by blaming William for the murders, Martinez risked substantiating Webb's testimony that William was "taking the fall" for appellant. Likewise, taking the position that William fired shots outside the murder scene that night would bolster the general credibility of Postlethwaite, the state's sole identifying witness. If the jury believed the portion of Postlethwaite's testimony identifying appellant as the gunman, evidence of William's involvement would not assist appellant's defense. On the other hand, if the jury believed William's testimony that he did not fire shots on the night of the murders, the jury would have necessarily rejected Postlethwaite's idenitification of William and would be more likely to reject his identification of appellant. By attacking the state's evidence implicating William, Martinez undermined the state's case against appellant.

{¶ 29} There is "no conflict of interest adversely affecting the attorney's performance at trial if an attorney at trial does not raise a defense on behalf of his client because to do so is not in that client's interest even though it is also in the interest of another client that it not be raised. To the contrary, that is a coincidence of interests." *Gambino*, 864 F.2d at 1071. We find here that Martinez labored under a coincidence of interests rather than an actual conflict of interests.

{¶ 30} Contrary to appellant's assertions in his fourth proposition of law, neither the trial court nor this court engage in harmless error review by discussing the merits of Martinez's strategy. Discussion of the merits of Martinez's strategy is relevant to whether an actual conflict adversely affected Martinez's performance at trial. Appellant placed the merits of Martinez's strategy in issue by presenting Kirkwood's testimony and by arguing to this court that "[t]he impact of the conflict

of interest was not in the presentation of the defense, but rather in the initial selection of the defense to present."

{¶ 31} In accordance with the above, we overrule appellant's third, fourth, and eighth propositions of law.

II

INDEPENDENT REVIEW

{¶ 32} Pursuant to R.C. 2929.05, we independently review appellant's death sentence to determine whether the evidence supports the jury's finding of aggravating circumstances; to reweigh the aggravating circumstances against the mitigating factors; and to determine whether the death sentence is proportionate compared to other similar cases. For the reasons that follow, we affirm appellant's sentence.

A. Aggravating Circumstances v. Mitigating Factors

{¶ 33} Appellant's four convictions of aggravated murder must merge into two, since he killed two victims. *State v. Huertas* (1990), 51 Ohio St.3d 22, 28, 553 N.E.2d 1058, 1066. Each count has two aggravating circumstances: multiple murder, R.C. 2929.04(A)(5), and murder during the commission of an aggravated burglary, R.C. 2929.04(A)(7). As we noted in both *Gillard I* and *Gillard II*, there is overwhelming evidence supporting appellant's guilt of these offenses. 40 Ohio St.3d at 229, 533 N.E.2d at 276; 64 Ohio St.3d at 312, 595 N.E.2d at 883.

{¶ 34} Appellant presented no evidence during the penalty phase and, instead, argued residual doubt as the sole mitigating factor. After a review of the record, we find that the evidence of appellant's guilt is overwhelming and convincing. We conclude that residual doubt is not an important mitigating factor in this case.

{¶ 35} Postlethwaite positively identified appellant as Maxwell's killer as Postlethwaite lay wounded on the floor at the crime scene. Appellant attempts to discredit Postlethwaite's identification by noting the following: the only light by

which Postlethwaite was able to see came from another room; Postlethwait drank eight small glasses of beer at the party prior to the murders; and Postlethwaite's right eye was partly blinded by the shooting. However, Postlethwaite retained 20/20 vision in his left eye and saw appellant's face *before* he was shot. Moreover, Postlethwaite knew both appellant and his brother.

{¶ 36} Appellant also refers to the possible involvement of his brother, William, and Tim Foehrenbach in the murders. The evidence does not show with complete certainty that appellant shot Ensign himself, and here, residual doubt is arguably entitled to some weight. The evidence clearly shows, however, that appellant was the principal offender in Maxwell's murder. Ensign and Maxwell were also shot by the same gun, raising a strong inference that the same perpetrator shot both. Appellant's actions after the murders also corroborate his guilt. Appellant fled to West Virginia, where he altered his appearance and used the alias "Butch Johnson." Appellant also confessed to Ronald Webb that he "pulled the trigger." Although appellant challenges Webb's credibility, we are unconvinced that the record supports his arguments.

{¶ 37} The trial court found that the guilt-phase evidence raised three other mitigating factors: provocation, R.C. 2929.04(B)(2); lack of a substantial history of criminal convictions, R.C. 2929.04(B)(5); and appellant's consumption of alcohol before the killings, R.C. 2929.04(B)(7). The trial court assigned little weight to provocation in the Ensign murder and little weight to the other two factors but gave provocation no weight in the Maxwell murder.

{¶ 38} We, too, assign little weight to appellant's alcohol consumption and lack of a substantial criminal history. We also find that provocation is entitled to no weight in either the Maxwell or Ensign murders. There was some testimony that Ensign started the fight with William. Nonetheless, Ensign inflicted no direct injury on appellant and Maxwell did not provoke appellant in any way.

**{¶ 39}** We also consider that appellant is the oldest of thirteen children and the father of two children. He is a high school graduate, has been self-employed as an auto mechanic, and has worked on pit crews in auto and motorcycle races. Ironically, appellant cites his close family ties as evidence of mitigation, since loyalty to his brother is one of the alleged motives for his crimes.

**{¶ 40}** Appellant raises, in his sixteenth and eighteenth propositions of law, the question of whether alleged legal errors in the trial or sentencing proceedings are R.C. 2929.04(B)(7) mitigating factors. We conclude that they are not.

**{¶ 41}** Generally, prejudicial errors at trial will require reversal of the conviction or sentence, rendering independent review of the appropriateness and proportionality of the death sentence moot. Similarly, errors that are waived, but amount to plain error or ineffective assistance of counsel, will require reversal of the conviction or sentence and any independent review would be moot. Under appellant's argument, the only trial errors that would be considered in a reviewing court's independent review are harmless errors or errors waived by effective counsel that are not plain errors. We see no reason why these types of errors, committed during a fundamentally fair trial of a defendant represented by competent counsel, should be considered mitigating factors. Thus, we hold that trial errors that are either harmless or waived by effective counsel are not mitigating factors under R.C. 2929.04(B)(7).

**{¶ 42}** In weighing the mitigating factors against the aggravating circumstances, we are mindful that "[w]hen a capital defendant is convicted of more than one count of aggravated murder, * * * [o]nly the aggravating circumstances related to a given count may be considered in assessing the penalty for that count." *State v. Cooey* (1989), 46 Ohio St.3d 20, 544 N.E.2d 895, paragraph three of the syllabus. We find that the aggravating circumstances in the Maxwell murder outweigh the mitigating factors and that the aggravating circumstances in the Ensign murder outweigh the mitigating factors beyond a reasonable doubt.

## B. Proportionality

{¶ 43} We conclude that the death penalty is appropriate and proportionate for both aggravated murder convictions. The sentence is appropriate when compared with similar "course of conduct" cases involving the purposeful killing, or attempt to kill, two people. See *State v. Brooks* (1986), 25 Ohio St.3d 144, 25 OBR 190, 495 N.E.2d 407; *State v. Frazier* (1991), 61 Ohio St.3d 247, 574 N.E.2d 483; *State v. Combs* (1991), 62 Ohio St.3d 278, 581 N.E.2d 1071; *State v. Davis* (1991), 62 Ohio St.3d 326, 581 N.E.2d 1362. The sentence is also proportionate when compared with other aggravated burglary-murder cases. See *State v. Wiles* (1990), 59 Ohio St.3d 71, 571 N.E.2d 97; *State v. Waddy* (1992), 63 Ohio St.3d 424, 588 N.E.2d 819. We reject appellant's arguments that his sentence is disproportionate to the sentences received by William Gillard and Tim Foehrenbach. The cases are not similar because neither of these defendants was tried for aggravated murder. Appellant's seventeenth proposition of law is overruled.

## C. Constitutionality

{¶ 44} In his final proposition of law, appellant challenges the constitutionality of Ohio's death-penalty statutory framework. We have consistently held that Ohio's death penalty scheme is constitutional and we continue to adhere to that position. See *State v. Awkal* (1996), 76 Ohio St.3d 324, 337-338, 667 N.E.2d 960, 972; *State v. Garner* (1995), 74 Ohio St.3d 49, 65, 656 N.E.2d 623, 638.

{¶ 45} For the foregoing reasons, we affirm the trial court's finding of no actual conflict, and affirm the convictions and the death penalty sentence.

*Judgment affirmed.*

DOUGLAS, F.E. SWEENEY and PFEIFER, JJ., concur.

RESNICK, J., concurs in judgment only.

MOYER, C.J., and LUNDBERG STRATTON, J., dissent.

_____

**LUNDBERG STRATTON, J., dissenting.**

{¶ 46} I believe an actual conflict of interest existed that adversely affected the performance of John Gillard's lawyer. Consequently, Gillard was denied his constitutional right to effective assistance of counsel and his conviction should be reversed. Therefore, I respectfully dissent.

{¶ 47} The trial court's initial failure to conduct a hearing on the issue of conflict of interest does not mandate reversal. John Gillard's attorney, Louis Martinez, never directly raised the issue of conflict of interest on behalf of John before the trial court. Instead, the state raised the issue when William was called to testify on his brother's behalf and the state requested the court to advise *William* of his Fifth Amendment right to remain silent. This was not the equivalent of an objection on behalf of *John*. Although the trial court appointed other counsel for the limited purpose of advising William of his rights, Martinez represented William at least until he testified at John's trial. *State v. Gillard* (1992), 64 Ohio St.3d 304, 307, 595 N.E.2d 878, 879-880.

{¶ 48} A court is not required to *sua sponte* raise the issue of conflict of interest.

{¶ 49} A better practice would have been for the trial court to stop the proceedings and to inquire into the potential of a conflict of interest. The fact that Martinez was later unable to testify for medical reasons at the remand hearing further underscores the importance of the timeliness of an inquiry. However, if a conflict is not raised, or inquired into, in such a hearing, a judgment will be reversed only if an appellant shows that an actual conflict adversely affected counsel's representation of the appellant. *State v. Manross* (1988), 40 Ohio St.3d 180, 532 N.E.2d 735; *Hamilton v. Ford* (C.A.11, 1992), 969 F.2d 1006, 1011.

{¶ 50} I believe that the evidence clearly shows that an actual conflict of interest existed because Martinez represented both John Gillard and his brother,

William, who was implicated in these crimes. Although John and William were not defendants in the same case, William had been originally charged with these murders and the attempted murder. William, represented by Martinez, later pleaded no contest to discharging a firearm within city limits. An ongoing investigation into these crimes continued during John's trial and William remained the subject of the investigation. Some two and one-half years later, William agreed in a plea agreement to testify *against* his brother in a retrial in exchange for a recommendation of early release following a guilty plea and sentencing for the aggravated burglary of the Hendricks home.

{¶ 51} Because Martinez represented both brothers, the choices he made before and during John's trial lead to the inescapable conclusion that Martinez was hampered by divided loyalties that adversely affected his performance. The evidence clearly shows that Martinez's joint representation of John and William influenced his selection of witnesses, his overall defense strategy, and his ability to zealously represent the interests of John. The United States Supreme Court has held that once a conflict of interest that has adversely affected the lawyer's performance is identified, prejudice to the defendant is presumed. *Cuyler v. Sullivan* (1980), 446 U.S. 335, 349, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333, 347.

{¶ 52} There is abundant testimony in the record that clearly incriminated William Gillard. Professor Kirkwood testified at the remand hearing that the following pieces of circumstantial evidence connected William to these crimes:

- *William* was at the house the night the murders occurred and had been in a fight with one of the victims.
- *William* was carrying brass knuckles.
- *William* was forcibly removed from the house.
- *William* later returned to the house and fired a gun outside shortly before the murders occurred.

- *William* fled the scene and was arrested four hours after the shootings.

- *William* gave the police a false name when he was arrested.

- Blood consistent with that of victim Denise Maxwell was found on *William's* shirt, and blood from victim Leroy Ensign was found on *William's* jacket.

- A bullet that matched the type of bullets from the murder weapon was found on *William*.

{¶ 53} Martinez's trial strategy was to establish an alibi defense for John. However, based upon the compelling evidence presented at trial, there existed a plausible defense that implicated William as a substitute or alternate defendant. Instead of bolstering John's alibi with an alternate defendant defense, Martinez decided to rely solely on the alibi defense. Martinez did not and could not consider this alternative defendant theory or even a combination of the alibi/alternative defendant theory because he represented William as well as John. Where the attorney's choice of strategy would have been different had there been separate representation, the attorney renders ineffective assistance of counsel. *Griffin v. McVicar* (C.A.7, 1996), 84 F.3d 880, 887.

{¶ 54} Further evidence of an actual conflict of interest is demonstrated by Martinez's direct examination of William, who testified on behalf of his brother. A conflict of interest may arise when counsel representing two defendants must decide whether either or both of the defendants should testify. "This kind of decision, difficult enough where two defendants at the same trial are represented by different counsel, is made doubly difficult where they are represented by the same counsel." *Morgan v. United States* (C.A.2, 1968), 396 F.2d 110, 114. This decision "may be unduly affected by the risk that [one defendant's] testimony may develop so as to disclose matters which are harmful to the other defendant or which conflict with the other defendant's story. The attorney's freedom to cross-examine

one defendant on behalf of another will be restricted where the attorney represents both defendants." *Id.*

{¶ 55} Here, although William was not a defendant in *this* case, his actions were so intertwined in the facts of the case that Martinez was tactically unable to fully examine William to extract testimony helpful to John because it would also tend to incriminate William. The majority finds that this choice of strategy was not prejudicial because the dangers of pursuing the alternative defendant theory *could* have had an adverse impact on John. However, the court in *United States v. Carrigan* (C.A.2, 1976), 543 F.2d 1053, 1057, stated:

"We cannot accept the proposition that the more potent the Government's case, the less compelling the criminal defendant's constitutional right to independent counsel. * * * Trial counsel could not possibly have given his full measure of professional devotion to clients presenting inconsistent defenses. Each was entitled to zealous and independent counsel. While here counsel obviously slighted White [one client] and favored Carrigan [his other client], he could not fully exploit Carrigan's willingness to testify without further damaging White's credibility. We see no need to speculate as to how independent counsel could have more competently handled the defense of either defendant. The record discloses the sharp conflict in their positions which, in the nature of things, prejudiced each even if one was apparently less disadvantaged than the other."

{¶ 56} Here, Martinez clearly did not vigorously pursue an allegation that William was the participant in the murders and that John had an alibi, because this would prejudice his own client, William.

{¶ 57} The majority reasons that if William had taken the fall, so would John by association. This "united we stand, divided we fall" approach was rejected in *Foxworth* v. *Wainwright* (C.A. 5, 1975), 516 F. 2d 1072, because, the court concluded, the conflict occurs not in presenting the defense chosen by counsel but in selecting defenses and strategies in the first place. The *Foxworth* court stated:

"Under these circumstances, counsel's choice of the 'united we stand, divided we fall' defense *was not a free choice of strategy. It was the only course open to an attorney* with the unenviable task of saving three boys from the electric chair. 'It must be remembered that in cases involving conflicts of interest, the conflict *does not always appear full-blown upon the record, since counsel may throughout endeavor to reconcile the conflict.*'" (Emphasis added.) *Id.*, 516 F.2d at 1079-1080. The *Foxworth* court reasoned that had counsel represented one defendant only, counsel could have more fully cross-examined prosecution witnesses on their testimony to inculpate the co-defendant, but that was not an avenue open because of counsel's joint representation. *Id.* at 1080.

{¶ 58} As was the case in *Foxworth*, I believe Martinez was so hindered by the joint representation that he also failed to effectively cross-examine other witnesses. Ron Postlethwaite, one of the victims, testified that he had heard gunshots in the backyard and saw William shoot a gun into the air. Postlethwaite then went back to sleep. Postlethwaite also testified that there was a third party present that evening, Timothy Foehrenbach. Martinez did not pursue inconsistencies in Postlethwaite's testimony regarding mistaken identity, his demeanor when police and emergency personnel arrived, and his failure to identify John to the paramedics who treated him at the scene. Paramedics noted that Postlethwaite was oriented, yet a police officer on the scene described him as "raving." A thorough cross-examination of Postlethwaite and other prosecution witnesses to emphasize William's presence at the scene would have strengthened John's alibi defense and could have established sufficient reasonable doubt in the jury's mind as to the guilt of John. However, because of the joint representation, Martinez did not, and could not, pursue questioning that would have implicated William which, at the same time, would have exonerated John.

{¶ 59} The case of *Griffin* v. *McVicar*, (C.A.7, 1996), 84 F.3d 880, is particularly on point. In *Griffin*, defense counsel represented two defendants,

Griffin and Smith, who were both charged with the murder of three individuals and an attempt to murder a fourth. Counsel presented a joint alibi defense. His main strategy was to discredit the eyewitness identifications of both defendants.

{¶ 60} While eyewitness testimony consistently implicated Griffin's co-defendant, there were significant contradictions in the testimony implicating Griffin. *Id*. at 889. Griffin asserted that he was denied effective assistance of counsel. Griffin claimed that his attorney failed to present the alternative defense that Griffin was merely a nonparticipating bystander, that his attorney was unable to emphasize testimony that would exonerate Griffin at the expense of Smith, and that his attorney failed to pursue lines of inquiry to aid Griffin at the expense of his co-defendant. Griffin claimed that, instead, his attorney's defense strategy was highly prejudicial to Griffin.

{¶ 61} As to ineffective assistance of Griffin's counsel, the Seventh Circuit cited conclusions reached by the state court of appeals in the same case:

"'As it was, [the attorney] only pointed to the inconsistencies and ambiguities as matters going to the credibility of the State's witnesses. Counsel could not give Griffin the best possible defense under the circumstances because to do so would have been disloyal to Smith, his original client. Because of this conflict of loyalties, he remained silent when independent counsel would have spoken out on Griffin's behalf.'" *Id*. at 885, quoting *People v. Griffin* (1984), 124 Ill. App.3d 169, 181, 463 N.E.2d 1063, 1072.

{¶ 62} The Seventh Circuit affirmed the grant of Griffin's petition for writ of habeas corpus. The court found that a conflict of interest existed on the basis that Griffin's counsel had failed to discuss with him the likely untruth of his alibi and the near certainty it would not be believed by a jury. This, coupled with the failure to assert an alternate defense that could rest on the weaknesses and contradictions in the testimony that implicated him in this shooting, left Griffin with

the task of refuting the evidence against both defendants as well as to establish an alibi on behalf of both of them. The *Griffin* court reasoned:

"In the face of the uncontradicted evidence placing Smith at the scene during the shootings, Griffin's testifying to an alibi which involved Smith could do nothing but damage his own case. While a defense based on simply raising doubts about the credibility of the testimony implicating Griffin in the shootings might well have been unsuccessful, the joint alibi defense was nearly as weak as no defense at all. There was only the slimmest chance, if any, that a jury would believe the alibi in the face of the consistent eyewitness testimony placing Griffin and Smith at the scene of the murders. On the other hand, an attorney representing only Griffin could have impeached the identifications of Griffin as a shooter by exploiting obvious inconsistencies in testimony. The joint representation prevented [Griffin's counsel] from exploiting the disparity in strength of the respective prosecution cases again Griffin and Smith.

" * * * It is often the unenviable job of defense counsel to choose among unpromising defenses. However, when an actual conflict of interest due to joint representation constrains an attorney to choose the hopeless in favor of the unpromising, the defendant has received ineffective assistance of counsel." *Id*. at 890.

{¶ 63} Finally, the Seventh Circuit found that the record disclosed no waiver of the conflict on Griffin's part or any evidence that the attorney discussed the potential of conflict of interest or the alternative defendant theories with his client. Nor was there any evidence presented at the remand hearing that Martinez had discussed the conflict of interest that existed because of his representation of both John and William so that John could make an informed choice about waiver and the selection of other defense theories.

{¶ 64} Although William was not a co-defendant in the same trial as John, he was charged with the same crimes. The reasons for the existence of the conflict

of interest are identical to those in the cases cited. The record in this case is replete with evidence implicating William in these crimes, from blood on his jacket, a matching bullet found on his body, and his flight from the scene, to his fight with one of the victims on the night of the murders. Initially, an arrest warrant was issued only for William. William's plea of no contest to the unlawful discharge of a firearm *placed him by his own admission* at the scene of these crimes. William's later plea included an agreement to testify *against* his brother if retrial occurred. Clearly, there was sufficient evidence upon which Martinez should have established an alternate defendant theory. Martinez could have used this evidence to attack the strength of the identification of John at the scene of the crime. However, Martinez did not present this evidence as part of a *defense* strategy, nor did he argue it to the jury in support of reasonable doubt for John's involvement. Because of Martinez's joint representation, he was constrained to rely solely on the alibi defense and was not free to pursue this plausible alternate defendant theory as part of his defense strategy.

{¶ 65} Although this case has a long and tortuous history, one still cannot overlook the actual conflict that clearly affected Martinez's ability to zealously represent John. Martinez was left with no choice but to choose the weaker line of defense. For these reasons, I believe reversal is mandated and, therefore, I respectfully dissent.

MOYER, C.J., concurs in the foregoing dissenting opinion.

_____