JOURNAL ENTRY AND OPINION
¶ 1 This is an appeal from an order of Judge Nancy Margaret Russo that found appellant, Willie J. Wilson, to be a sexual predator, and that he was subject to the registration requirements of R.C. Chapter 2950. Wilson claims that a sexual predator hearing should not have been held because he was not then incarcerated for a sexually oriented offense and, for the same reasons, claims he cannot be required to register. Wilson further claims that, on remand, res judicata barred a second predator hearing because this court had reversed the judge's November 1999 determination that he was a sexual predator because of insufficient evidence; that the State presented no new evidence to aid the determination on remand; and that the judge, in violation of constitutional due process and separation of powers principles, improperly relied on evidence not presented by the State. We affirm the sexual predator determination, but find that Wilson cannot be compelled to register.
¶ 2 In November 1999, while Wilson was in prison on a 1987 conviction for aggravated burglary and theft, the Ohio Department of Rehabilitation and Correction ("DRC"), pursuant to R.C. 2950.09(C)(1), recommended that he be declared a sexual predator and he was brought to Cuyahoga County for a hearing. The State filed a "declination" notice stating that it would not seek a sexual predator adjudication because it believed the evidence insufficient. However, an order journalized December 20, 1999, stated the declination was moot, and that the State had orally expressed its intention to pursue the sexual predator adjudication. The hearing was held on November 16, 1999 and, on December 20, 1999, the judge ruled that Wilson was a sexual predator.
¶ 3 He appealed in State v. Wilson[1] ("Wilson I"), claiming that he could not be adjudicated a sexual predator because he was not then incarcerated for a sexually oriented offense, that the evidence was insufficient to sustain the finding, and that the insufficiency entitled him to a reversal that would bar rehearing on grounds of res judicata. The Wilson I panel conceded that he was not incarcerated for a sexual offense at the time the proceedings were instituted, but overruled his claim that this barred the hearing, finding it sufficient that Wilson had at one time been convicted of a sexually oriented offense, and that he was incarcerated for any offense when the sexual predator proceedings were conducted.
¶ 4 The Wilson I panel ultimately reversed the judgment, however, finding that the State had presented insufficient evidence to support the adjudication, stating:
 ¶ 5 During the subject sexual predator hearing, the state presented bare allegations regarding appellant's prior sexually oriented offenses. In fact, the state acknowledged that one of the files had been destroyed. The state merely established that appellant committed two sexual assaults when he was a teenager. These crimes occurred over twenty-two years prior to appellant's sexual predator determination hearing. The state failed to present any exhibits or witnesses, on the record, to demonstrate that appellant "is likely to engage in the future in one or more sexually oriented offenses."
¶ 6 After making this determination, however, the Wilson I panel rejected an argument that res judicata prevented them from remanding the case for rehearing, and specifically remanded the case "with instructions to conduct a sexual predator determination hearing consistent with R.C. Chapter 2950 and this opinion."
¶ 7 On remand, Wilson again claimed that res judicata barred rehearing and that a sexual predator hearing was improper because he was not incarcerated for a sexually oriented offense. He added an argument that, even if he could be adjudicated a sexual predator, he could not be required to register under R.C. Chapter 2950. The State stipulated that Wilson was not incarcerated for a sexually oriented offense at the time of his hearing, but contended the judge could both adjudicate him a sexual predator and impose registration requirements.
¶ 8 At the second hearing, the State presented certified records showing Wilson was convicted of sexual offenses in 1977 and 1978 and discussed some of the facts of those offenses, particularly arguing that Wilson displayed extraordinary[2] cruelty to his second victim by gloating to her over the fact he was then on probation for his first sex offense. The State also made Wilson's institutional record an exhibit and directed the judge's attention to specific prison infractions, including a 1981 incident in which Wilson was disciplined after being found guilty of beating and threatening his cellmate for oral sex, and also for forcing the cellmate to wash his clothes. In 1988, he was found guilty of removing ceiling tiles and using a mirror to peep into a female restroom. The State stressed that Wilson's institutional record showed that he had not undergone any sex offender treatment, that he had refused to submit to a psychological evaluation after remand, and that this should be used as evidence against him.
¶ 9 Wilson countered that his refusal to submit to a psychological evaluation was based on his assertion of the privilege against self-incrimination, and also complained that undergoing such an evaluation would unduly lengthen his incarceration in the county jail pending his hearing. He then argued that the State had presented the same evidence found to be insufficient in Wilson I, and made a preliminary objection to the judge adding anything to the record.
¶ 10 The judge ruled that the evidence clearly and convincingly showed Wilson's likelihood of committing future sexual offenses based upon evidence in his institutional record. She specifically noted that this record revealed his history of crimes against women, his failure to enroll in sex offender treatment, the prison sexual assaults in 1981, and womens' restroom incident in 1988. She referred to a 1985 psychological report that suggested Wilson had "aggressive tendencies and precarious emotional control of body impulses" and that he exhibited a "sexual preoccupation[,]" and a 1996 incident in which Wilson was disciplined for writing sexually suggestive letters to female prison employees. Wilson again objected that the judge was improperly referring to portions of the exhibit not specifically referenced by the State, but was overruled. He was found to be a sexual predator and was notified that he was required to register under R.C. Chapter 2950.
¶ 11 The first two of Wilson's four assignments of error can be addressed together and state:
¶ 12 I. THE TRIAL COURT ERRED WHEN IT CONDUCTED A HEARING PURSUANT TO R.C. 2950.09(C) WHERE THE OFFENSE THAT UNDERLIED (sic) THE APPELLANT'S CONVICTION WAS NOT "SEXUALLY ORIENTED.
¶ 13 II. THE TRIAL COURT ERRED WHEN IT ORDERED THAT THE APPELLANT REGISTER WHERE SUCH REGISTRATION IS NOT PROVIDED FOR BY THE OHIO LEGISLATURE IN R.C. 2950.04.
¶ 14 The State contends that both of these assignments are barred by the law of the case doctrine or res judicata, the first because it was specifically decided in Wilson I, and the second because it is "beyond the scope of remand." We agree that the first assignment is barred, but not the second.
¶ 15 The law of the case doctrine states that a judge may not disregard an appellate court's mandate on remand.[3] The Wilson I court specifically considered and rejected the argument that he could not be adjudicated a sexual predator while incarcerated for a non-sexual offense. This ruling constitutes the mandate of the appellate court, and the judge was without authority to rule otherwise on remand. Moreover, a reported opinion of this court, decided after Wilson I reached the same conclusion,[4] and we are bound to follow it.[5]
¶ 16 We are not similarly convinced, however, that the second, assignment is also barred. The Wilson I court was not presented with this issue and did not decide it and that decision presented no mandate to be followed on remand. Res judicata, however, might bar the issue because it could have been raised at the original hearing,[6] but we find that this issue concerns subject matter jurisdiction and cannot be waived. As discussed below, where no statutory authority exists to impose a registration requirement, any judicial order purporting to impose such a duty is void ab initio, and res judicata does not prevent us from correcting the error.
¶ 17 Decisions finding that an offender can be adjudicated a sexual predator even if imprisoned for a non-sexual offense have focused on the language of R.C. 2950.01(G)(3) and 2950.09(C)(1), which require only that the defendant be imprisoned at the relevant time,[7] while those cases holding that such an offender cannot be required to register have focused on the language of R.C. 2950.03 and 2950.04, which impose registratio duties only upon those imprisoned for a sexually oriented offense at the time the proceedings are instituted.[8]
¶ 18 Although the State claims it is inconsistent to allow a sexual predator adjudication without requiring registration, the Ohio Supreme Court's decision in State v. Bellman, supra, demonstrates that adjudication does not necessarily trigger registration requirements, and other appellate courts also have determined that, even though an offender can be retroactively classified as a sexual predator when in prison for a different offense, he cannot be required to register under those circumstances.[9] This gap in the application of R.C. Chapter 2950 has been noted since the Bellman decision in 1999, and the General Assembly has yet to fill it.
¶ 19 The State suggests that Bellman should be distinguished because the defendant in that case escaped the provisions of R.C. 2950.04
for a different reason, but such a distinction is unavailing. The reason that an offender is not identified in R.C. 2950.04 is irrelevant; the important point in Bellman is that an offender who is not so identified cannot be required to register, and that point is also recognized in the appellate decisions noted above.
¶ 20 The State next argues that even if the statute does not authorize a judge to order registration, it also does not prevent it, and the sexual predator determination necessarily carries with it the power to order registration. The State provides no authority for finding a common-law power to order sexual predator registration, and we see no reason to believe that any authority exists. If such a power did exist, clearly the Ohio Supreme Court would have applied it in Bellman, instead of ruling, as it did, that a defendant could not be required to register even though he was properly adjudicated a sexual predator. We overrule the first assignment of error, but sustain the second, because Wilson cannot be required to register as a sexual predator even if properly adjudicated as one.[10]
¶ 21 The third assignment states:
 ¶ 22 III. THE EVIDENCE IS INSUFFICIENT, AS A MATTER OF LAW, TO PROVE BY "CLEAR AND CONVINCING EVIDENCE" THAT APPELLANT "IS LIKELY TO ENGAGE IN THE FUTURE IN ONE OR MORE SEXUALLY ORIENTED OFFENSES."
¶ 23 Because Wilson's adjudication as a sexual predator might have consequences beyond his registration requirements, we will address this assignment even though he is not subject to sexual predator registration under R.C. Chapter 2950. He claims that res judicata
prohibits rehearing where the State presented legally insufficient evidence at the first hearing.
¶ 24 Although this court has reached conflicting results on the issue of remanding a sexual predator determination after reversal for insufficiency,[11] the second hearing and appeal here are governed by the law of the case doctrine. The Wilson I opinion specifically remanded the case for rehearing, after determining that the reversal for insufficiency did not bar further proceedings. Regardless of the opinion of this panel or its individual judges, the issue has already been determined in this particular case.
¶ 25 Wilson also claims the evidence was insufficient because the State presented the same evidence found insufficient in Wilson I, but he is incorrect. The record of the first hearing shows that the State in fact presented no evidence that Wilson had even been convicted of a sexually oriented offense, much less that he was likely to commit offenses in the future. The State did not document any of Wilson's criminal history, but simply provided a narrative argument alleging that he had been convicted of two sexual offenses in 1977 and 1978, and that the second offense was committed while he was awaiting sentencing for the first. These representations were not evidence, and the State submitted nothing more. The only evidence presented was Wilson's own testimony, in which he admitted to the 1977 and 1978 convictions, but claimed that his years in prison had rehabilitated him. It doesnot appear that his institutional record was even requested before the first hearing, much less introduced into evidence.
¶ 26 At the second hearing the State introduced Wilson's institutional file as an exhibit, as well as documents showing his 1977 and 1978 convictions, and police reports containing a victim's statement in the second offense. Although we do not find any record that Wilson gloated about being on probation or awaiting sentencing for the first sex offense while he was committing the second, the victim's statement does indicate that he stopped her and a male companion in a car, ordered the man out of the car at gunpoint, and drove off with her, then repeatedly raped her and ordered her to tell him "how much she enjoyed it" as he did so.
¶ 27 The prison record contained significant evidence not introduced at the original hearing, and showed his commission of further violent sexual offenses and intimidation of his victims, and a continued display of inappropriate sexual behavior extending through 1995, when he was disciplined for sending sexually suggestive letters. This record reveals a violent sexual offender whose behavior over a period of nearly twenty years indicates a continuing danger, and is sufficient support for the judge's determination that Wilson is likely to commit future sexual offenses. The third assignment of error is overruled.
¶ 28 The fourth assignment states:
 ¶ 29 IV. THE APPELLANT'S HEARING VIOLATED DUE PROCESS AND THE CONCEPTS OF SEPARATION OF POWERS BECAUSE THE TRIAL COURT PRESENTED AND RELIED UPON EVIDENCE NOT PRESENTED BY THE STATE.
¶ 30 Here Wilson claims that the judge improperly relied on parts of the institutional record not specifically referenced or relied on by the State in its argument. The State, however, made the entire record an exhibit in the case, and generally and specifically referred to much of what the judge relied on in making her ruling. Although the judge made more pointed comments concerning his criminal record, the State generally argued that Wilson's pattern of criminal offenses was relevant, even if not all of them were sexual offenses. The judge reviewed the victim's statements concerning his 1978 rape conviction and found, as did we, evidence of extraordinary cruelty other than that claimed by the State. The only incident the judge relied on that the State did not discuss at any level was the 1996 discipline for sending sexually suggestive letters.
¶ 31 Even though the institutional record was made an exhibit at the hearing, Wilson claims that the judge violated his constitutional due process rights and the separation of powers doctrine when she relied on the evidence it contained. We disagree. Wilson does not claim that he was not given notice of the evidence the State intended to present or rely on, or that he did not have a fair opportunity to prepare a defense, but only claims that the judge cannot rely on evidence in the record unless the State has specifically pointed to it. While this argument might have merit if the State introduced large numbers of documents and left the judge to discern their import, the facts do not show such abdication here.
¶ 32 Although concerns have been expressed that current procedures in conducting sexual predator hearings raise due process and separation of powers issues,[12] the prison record appears to be less than one hundred fifty pages, and the record of his 1977 and 1978 convictions, including the police reports, comprises less than fifty pages more. Moreover, the State did not simply turn the record over to the judge for review, but pointed out several, if not all, of the relevant portions within it, and argued that Wilson's record of offenses in prison showed his continued risk of re-offending. There is no record that Wilson requested or was denied discovery of a more detailed summary of the evidence the State expected to present, and the record does not show that the exhibits were so voluminous or intractable that Wilson would plainly[13] be unable to prepare a defense without more information.
¶ 33 Nothing indicates that Wilson's institutional record was inappropriate for use as evidence, or that the State simply laid it at the judge's doorstep and asked for judgment in its favor. We cannot fault a judge for reviewing a record properly introduced, for that is what judges do. Without such review, a judge would be unable to verify the facts claimed by the parties, and in many cases would make decisions based upon unsupported representations. Regardless of legitimate concerns that might exist in sexual predator proceedings generally or in other specific cases, we do not find reversible due process or separation of powers violations here. The fourth assignment of error is overruled.
¶ 34 Judgment affirmed in part and reversed in part.
¶ 35 It is ordered that the appellant and appellee split the costs herein taxed.
¶ 36 This court finds there were reasonable grounds for this appeal.
¶ 37 It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
¶ 38 A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, P.J., and DIANE KARPINSKI, J., CONCUR.
[1] (Oct. 26, 2000), Cuyahoga App. No. 77530, unreported.
[2] We so characterize the cruelty displayed because it is in addition to that naturally attending the offense, and not because it is particularly more heinous than other acts of cruelty attending a rape.
[3] State ex rel. Sharif v. McDonnell (2001), 91 Ohio St.3d 46,47-48, 741 N.E.2d 127, 129.
[4] State v. Childs (2001), 142 Ohio App.3d 389, 393-394, 755 N.E.2d 958,961.
[5] Rep.R. 2(G)(2).
[6] State v. Gillard (1997), 78 Ohio St.3d 548, 549, 679 N.E.2d 276,279.
[7] Wilson I; Childs.
[8] State v. Bellman (1999), 86 Ohio St.3d 208, 212, 714 N.E.2d 381,384; State v. Riley (2001), 142 Ohio App.3d 580, 585-586,756 N.E.2d 676.
[9] Riley, supra; State v. Benson (Aug. 28, 2000), Butler App. No. CA99-11-194, unreported; State v. Staples (Sept. 28, 2001), Lake App. No. 98-L-238, unreported.
[10] We express no opinion, however, on whether Wilson is, or can be, required to register as a sexually oriented offender or as a habitual sex offender under R.C. Chapter 2950.
[11] See, e.g., State v. Abelt (May 31, 2001), Cuyahoga App. No. 77754, unreported (reversal and remand for rehearing); cf. State v.Fancher (Sept. 27, 2001), Cuyahoga App. No. 77643, unreported (reversal with instructions to find defendant not to be a sexual predator).
[12] See State v. Hills (Feb. 7, 2002), Cuyahoga App. No. 78546, unreported (Kilbane, J., dissenting in part).
[13] Again, because he did not request discovery and did not assign error on the issue, we can give Wilson relief only if, among other things, the lack of a detailed summary was plain error. In re M.D.,supra.