OPINION
Defendant John Grant Gillard appeals a judgment of the Court of Common Pleas of Stark County, Ohio, which convicted him on two counts of aggravated murder, attempted aggravated murder, and aggravated burglary. The trial court sentenced appellant to death. The action comes before us upon appellant's motion to re-open his appeal pursuant to App. R. 26 (B) and State v.Murnahan (1992), 63 Ohio St.3d 60. Thus our initial analysis in this case requires we determine whether the case is properly before us.
ASSIGNMENTS OF ERROR
ASSIGNMENT OF ERROR NO. I
 THE EVIDENCE IN APPELLANT GILLARD'S CASE WAS NOT SUFFICIENT TO SUPPORT HIS CONVICTIONS UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 9 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.
ASSIGNMENT OF ERROR NO. II
 APPELLANT GILLARD WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL DURING ALL PHASES OF HIS PROCEEDINGS
ASSIGNMENT OF ERROR NO. III
 THE PROSECUTOR'S MISCONDUCT IN THE TRIAL PHASE DENIED APPELLANT GILLARD HIS DUE PROCESS RIGHT TO A FAIR TRIAL.
ASSIGNMENT OF ERROR NO. IV
 THE TRIAL COURT ERRORS DURING APPELLANT'S TRIAL VIOLATED HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, NINTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.
ASSIGNMENT OF ERROR NO. V
 THE APPEARANCE OF JUDICIAL BIAS AND IMPROPRIETY DENIED APPELLANT GILLARD A FAIR TRIAL.
ASSIGNMENT OF ERROR NO. VI
 THE DEATH SENTENCE IS INAPPROPRIATE AND UNRELIABLE WHEN VOIR DIRE ERRORS DENY A CAPITAL DEFENDANT A FAIR TRIAL AND A FAIR JURY.
ASSIGNMENT OF ERROR NO. VII.
 WHEN A TRIAL COURT RELEASES GRAND JURY TRANSCRIPTS TO THE STATE TO AID IN PREPARATION OF AN APPEAL, THE COURT MUST RELEASE THE TRANSCRIPTS TO THE DEFENSE AND MAKE THE TRANSCRIPTS A PART OF THE RECORD ON APPEAL.
ASSIGNMENT OF ERROR NO. VIII
 THE COURT HAS DENIED APPELLANT THE OPPORTUNITY TO FILE AN ADEQUATE BRIEF DEPRIVING IN VIOLATION OF THE FOURTEENTH AMENDMENT.
In Murnahan, supra, the Ohio Supreme Court held:
 Where the time period for reconsideration in the court of appeals on direct appeal to the Supreme Court has expired, a delayed claim of ineffective assistance of appellate counsel must first be brought in an application for delayed reconsideration in the court of appeals where the alleged error took place, pursuant to App. R. 26 and App. R. 14 (B), and if delayed reconsideration is denied then the defendant may file for delayed appeal in the Supreme Court, pursuant to Section 8, Rule II. of the Rules of Practice of the Supreme Court.
Syllabus by the court, paragraph three.
In 1993, App. R. 26 was amended in response to Murnahan,supra. Prior to Murnahan, App. R. 26 permitted applications for reconsideration to be filed within ten days of the journalization or announcement of the appellate decision. The Murnahan court found claims of ineffective assistance of appellate counsel may be left undiscovered because of the inadequacy of appellate counsel or the inability to identify counsel's errors within the time allowed for reconsideration. For this reason, Murnahan provided for a delayed reconsideration. App. R. 26 was amended to provide for reconsideration in criminal cases beyond the previous limitation of time, but only in alleged instances of ineffective assistance of counsel in the direct appeal, not in post-conviction proceedings. App. R. 26 now provides for applications to be filed more than 90 days after the appellate court's judgment is journalized if the appellant can show good cause.
For the purposes of App. R. 26, the term "ineffective assistance of counsel" is intended to comprise the two prongs set forth in the United States Supreme Court case of Strickland v.Washington (1984), 466 U.S. 668. In order to show ineffective assistance of counsel, the accused must show both that counsel was deficient in the representation, and also that the deficiency actually prejudiced the accused's ability to receive a fair and reliable trial. Ohio uses the Strickland standard to review claims of ineffective assistance of counsel, see State v. Bradley
(1989), 42 Ohio St.3d 136.
Thus before us, appellant here must show both that his appellate counsel was ineffective in failing to raise issues before us, and appellant must also show that the ineffective assistance of appellate counsel and the prior appellate proceedings prevented these errors from being presented effectively to this court. To do so, the appellant must prove there exists a reasonable probability that, but for appellate counsel's ineffectiveness, the result of the appeal would have been different. Otherwise, the ordinary principles of resjudicata are applicable, see Murnahan, supra, at 66.
A review of the history of this case is most pertinent. On March 11, 1985, appellant was indicted on four counts of aggravated murder with specifications, two counts of attempted aggravated murder, and one count of aggravated burglary, each with a firearms specification. Appellant was convicted on June 12, 1985, and on June 17, 1985 the jury returned its verdict recommending the death penalty. On June 19, 1985, the trial court accepted the jury's recommendation.
The case then came for the first time before this court, and we reversed the convictions and sentences because we found errors in the guilt phase of the trial. We remanded the case for a new trial, see State v. Gillard (January 21, 1987), Stark Appellate #6701, unreported. Because we reversed appellant's conviction and sentence, we did not perform the statutorily required appropriateness and proportionality review. The Ohio Supreme Court granted the State's leave to appeal our judgment, reversed our judgment, and reinstated the appellant's convictions in Statev. Gillard (1989), 40 Ohio St.3d 226, hereinafter Gillard I. The Supreme Court remanded appellant's case to us to perform the appropriateness and proportionality review.
In State v. Gillard (June 25, 1990), Stark Appellate #CA-6701, unreported, this court affirmed appellant's death sentence. The matter then returned to the Ohio Supreme Court for its review.
At this point, a new twist arose. In State v. Gillard
(1992), 64 Ohio St.3d 304, hereinafter Gillard II, the Ohio Supreme Court found the attorney who represented appellant had a possible conflict of interest in representing him, and remanded the matter to determine whether the initial joint representation of appellant and his brother, who was implicated in the crime, placed the attorney in a conflict of interest. The Ohio Supreme Court noted:
 Although appellant has never previously raised this issue, we have decided to ask the question because of the possibility that appellant has been denied his most fundamental constitutional rights under the Fifth and Sixth Amendments of the United States Constitution. Where, as here, a possible violation of due process and the right to counsel exists, we are not only empowered to consider the question, but it is our duty to do so as court of last resort.
Gillard, II, at 306.
The Supreme Court in Gillard, II, remanded the matter to the trial court for a hearing on the issue of whether appellant's counsel had an actual conflict of interest in representing appellant and his brother. The Supreme Court did not perform its independent review of the appropriateness and proportionality of the death sentence required by R.C. 2929.05(A) at that time. Instead, the Supreme Court instructed the trial court to conduct a hearing on the issue of actual conflict of interest. If, upon remand, the trial court found there was an actual conflict of interest, the court was directed to conduct a new trial. In the alternative, the Supreme Court held if the trial court determined no actual conflict of interest existed, then the trial court must return the cause to the Supreme Court so it could complete the statutorily mandated review, Gillard II, at 312.
Upon remand, the trial court conducted a review on the issue of whether an actual conflict of interest existed in Attorney Louis Martinez representing appellant and his brother. The court noted both John Gillard and his brother William testified in the defense case in chief in the guilt phase of the trial. William's testimony was consistent with, and corroborated appellant's testimony and supported appellant's alibi defense. The trial court specifically found the testimony was complimentary, and contained a common theme that neither was involved in the incident and that the prosecution witnesses were not credible and were not truthful. The trial court found the defense was well planned, well executed, and competent. While appellant maintained in the hearing that the best defense strategy should have been to present John Gillard's alibi coupled with a suggestion to the jury that most of the State's evidence implicated William, the trial court found Mr. Martinez used a sound trial strategy in simply asserting neither appellant or his brother was involved the incident. The trial court concluded because there was no defense in this matter wherein one brother assigned blame to the other, but rather there was common interest in attacking the credibility of the prosecution witnesses, no actual conflict of interest existed. The matter was appealed to this court, and we found in State v.Gillard (December 13, 1995), Stark Appellate #95CA2057, unreported, that we had no jurisdiction to review the matter. Instead, the express instructions of the Ohio Supreme Court were to return the matter directly to the Supreme Court of Ohio for its proportionality and appropriateness review.
Thereupon, the Ohio Supreme Court took the appeal for the third time. In State v. Gillard (1997), 78 Ohio St.3d 548, hereinafter Gillard III, the Ohio Supreme Court found the aggravating circumstances outweighed any mitigation, and also found no actual conflict of interest resulted from Mr. Martinez's presentation of appellant and his brother. The Supreme Court concluded in Gillard III, the death penalty was appropriate and proportionate. A strong dissent in Gillard asserts there was an actual conflict of interest because Martinez's joint representation of John and Willard influenced Martinez's overall defense strategy, and led him to choose a straight alibi defense rather than an alibi/ alternative suspect defense.
Against this backdrop, we must review whether the motion to re-open this appeal was made timely, or if, although untimely, there is good cause for the delay. Helpful to an analysis is the Supreme Court's opinion in State v. Cole (1982), 2 Ohio St.3d 112. In Cole, the Ohio Supreme Court reviewed whether resjudicata barred appellant from raising the issue of effective assistance of trial counsel in a post-conviction relief petition. While not directly on point, nevertheless, Cole is extremely helpful in directing our approach here. In Cole, the Supreme Court noted the doctrine of res judicata provides a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or claim or lack of due process which was raised or could have been raised, Cole at 113, citations deleted. The Cole court cited State v. Carter (1973),36 Ohio Misc. 170, with approval. Carter held that counsel cannot realistically be expected to argue his own incompetence, and for this reason, res judicata does not act to bar a defendant represented by the same counsel at trial and upon direct appeal from raising a claim of ineffective assistance of counsel in a petition for post-conviction relief.
Although State v. Cole is an older case, we find its rationale is still applicable. Thus, in addition to charting the procedural history, we also trace the history of appellant's representation over the years.
As noted supra, Louis Martinez, Esquire and Craig Chessler, Esquire represented appellant during the original trial in this matter in 1985. When the matter came before us in 1986 — 1987, Jack Blakeslee, Esquire was counsel of record. The record on appeal, at least at this late date, does not demonstrate whether Mr. Blakeslee had co-counsel before us. In the Supreme Court case in Gillard, I, counsel for appellant were John Mackey, Esquire and Kathleen Tatarsky, Esquire. Mr. Mackey and Ms. Tatarsky also represented appellant when the cause was remanded to our court to conduct a proportionality review. It appears from the record the Public Defender's Office became involved in the case went back to the Supreme Court in Gillard, II, and the Public Defender's Office has continued its representation to this day. Unfortunately, the record before us contains some gaps, undoubtedly because of the passage of time and the numerous trips the case file has made between the various courts which have reviewed it.
Reviewing the history of case, and the history of representation, we find appellant was not required to raise the issue of ineffective assistance of appellate counsel, in GillardI, because Mr. Blakeslee was successful in our court, and Mr. Mackey and Ms. Tatarsky were defending our judgment before the Supreme Court. When the Supreme Court reversed and remanded the matter in Gillard I, the matter was remanded to us for the limited purpose of performing our statutory independent review of the appropriateness and proportionality of the death penalty. It would have been inappropriate to raise ineffective assistance of appellate counsel at that stage of the trial, because the Ohio Supreme Court remand was for a limited purpose.
When the Public Defender became involved prior to the Supreme Court's pronouncement in Gillard, II, the Public Defender not only appealed our decision in the proportionality and appropriateness review, but also raised the issue of whether trial counsel had a possible conflict of interest, which was an admittedly new issue for the first time in the case's second appearance before the Supreme Court. The Supreme Court found it was appropriate to examine this issue because it dealt with appellant's most fundamental constitutional rights, and because the Supreme Court was, at this point, functioning as the court of last resort for this appellant, who had been sentenced to die.
We find the issue of the effectiveness of appellate counsel should have been raised in Gillard, II. Nevertheless, cognizant of the Supreme Court sentiments expressed on the issue of trial counsel's conflict of interest, we find in this capital case although the matter may have been raised in an untimely fashion, there is nevertheless good cause to review appellant's claims if we otherwise have jurisdiction to do so.
The Supreme Court's most recent pronouncement, announced June 11, 1997, Gillard, III reviewed the trial court's determination there was no actual conflict of interest in trial counsel's representation of appellant and his brother. The Supreme Court affirmed that decision, and then proceeded to perform its independent review pursuant to R.C. 2929.05. The Supreme Court expressly found its duty was to determine whether the evidence supported the jury's finding of aggravating circumstances, to re-weigh the aggravating circumstances against the mitigating factors, and to determine whether the death sentence is proportionate compared to other similar cases. The Supreme Court affirmed appellant's sentence of death.
Less than three weeks later, appellant filed this application for re-opening pursuant to App. R. 26 (B). Pursuant to Murnahan,supra, this court may review a case after the time for appeal has run if appellant demonstrates appellate counsel was ineffective in failing to assign errors in the first appeal, which, had they been raised, would have resulted in a reversal of the case. The matter is compounded, of course, by the fact that this court did in fact reverse Gillard I, only to be reversed in our turn by the Ohio Supreme Court. It is difficult to conceive how this court can find Mr. Blakeslee should have been more effective especially given the number of times this case has been subjected to judicial scrutiny after Mr. Blakeslee's representation ended and other counsel in turn represented appellant.
Notwithstanding these conceptual problems, we have reviewed the appendix to the Supreme Court's opinion in Gillard III, at 563-565. We have compared appellant's assignments of error one through seven to the propositions of law which appellant raised in his appeal in Gillard III, and we find the first seven assignments of error before us were raised before the Ohio Supreme Court. We also note the Ohio Supreme Court did not discuss the particular propositions of law which correspond to appellant's present assignments of error one through seven.
In Gillard II, when the Supreme Court perceived a potential new issue, that of Mr. Martinez's conflict of interest, the court refrained from completing its proportionality and appropriateness review, and remanded the matter for resolution. Here, the Supreme Court did not remand the issues, nor did it refrain from entering a final judgment. This court cannot assume jurisdiction over this matter given the state of this record.
We find the principles of res judicata bar appellant's raising of these assignments of error before us. We can only presume on the state of this record the Supreme Court was fully cognizant of these alleged errors when it affirmed appellant's death sentence. Although the Supreme Court did not specifically address these assignments of error, that is not a matter appropriate for this court's comment, and we find the Supreme Court's opinion in Gillard III disposes of assignments of error one through seven.
Finally, with regards to appellant's assignment of error eight, appellant moved this court pursuant to Loc. R. 9 (B) for leave to file a brief in excess of 30 pages. This court granted leave on October 21, 1997, but directed the brief should not exceed 50 pages. Appellant now complains 50 pages was insufficient to fully develop his arguments before us. However, the record does not demonstrate appellant ever brought this matter to our attention by means of another motion. Thus, we were prohibited from affording appellant the relief he requested. Further, we find appellant's brief developed the issues he raises, not just adequately but eloquently.
Because we find assignments of error one through seven are barred by the principles of res judicata, it follows that assignment of error eight is moot.
For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed. It is ordered a special mandate issue out of this court directing the Court of Common Pleas to carry its judgment into execution.
Gwin, J., Farmer, P.J., concurs.
Hoffman, J., dissents.