OPINION
Appellant John Grant Gillard appeals a judgment of the Stark County Common Pleas Court dismissing his Petition for Post-conviction Relief:
ASSIGNMENTS OF ERROR:
 I. THE TRIAL COURT ERRED IN ITS DENIAL OF APPELLANT'S FIRST CLAIM FOR RELIEF IN VIOLATION OF THE FIFTH
AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION, ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION, AND BRADY VS. MARYLAND, 373 U.S. 83
(1963).
 II. THE TRIAL COURT ERRED IN ITS DENIAL OF APPELLANT'S SECOND CLAIM FOR RELIEF IN VIOLATION OF THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION.
 III. THE TRIAL COURT ERRED IN ITS DENIAL OF APPELLANT'S FOURTH CLAIM FOR RELIEF, IN VIOLATION OF THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 2, 5
AND 16 OF THE OHIO CONSTITUTION.
 IV. THE TRIAL COURT ERRED IN DENYING APPELLANT'S THIRD CLAIM FOR RELIEF IN VIOLATION OF THE EIGHTH, AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 2, 9, 10, AND 16 OF THE OHIO CONSTITUTION.
 V. THE TRIAL COURT ERRED IN ITS DENIAL OF AN EVIDENTIARY HEARING WHERE APPELLANT'S PETITION WAS FACIALLY SUFFICIENT TO RAISE AN ISSUE THAT APPELLANT'S CONVICTION IS VOID OR VOIDABLE.
 VI. THE TRIAL COURT ERRED APPLYING THE DOCTRINE OF RES JUDICATA TO SOME OF APPELLANT'S CLAIMS FOR RELIEF, THUS VIOLATING HIS RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, NINTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 1, 2, 9, 10, AND 16 OF THE OHIO CONSTITUTION.
 VII. THE TRIAL COURT ERRED IN DENYING APPELLANT'S REQUESTS FOR DISCOVERY IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH, NINTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 1, 2, 9, 10, 16 AND 20 OF THE OHIO CONSTITUTION.
 VIII.OHIO DOES NOT PROVIDE AN ADEQUATE CORRECTIVE PROCESS IN VIOLATION OF THE DUE PROCESS, THE EQUAL PROTECTION AND THE SUPREMACY CLAUSES OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 2, 10, 16 OF THE OHIO CONSTITUTION.
 IX. THE CUMULATIVE ERROR OF APPELLANT'S SUBSTANTIVE CLAIMS MERIT REVERSAL OR REMAND FOR A PROPER POST-CONVICTION PROCESS.
On December 31, 1984, Timothy Hendricks had a New Year's Eve party at his house in Canton, Ohio. During the party, appellant's brother, William Gillard, got into a fight with Leroy Ensign, which resulted in Gillard being ejected from the residence. The party continued into the early morning of January 1, 1995, at which time the guests and their hosts settled in for the night.
Ron Postlethwaite awakened to the sound of gunshots outside the residence. He looked outside, and saw William Gillard shooting a gun into the air. Postlethwaite tried unsuccessfully to wake up Ensign. Postlethwaite then threw his body on top of his fianceacute, Denise Maxwell, who was sleeping on the couch. Postlethwaite heard the door being kicked open, and people rushing into the house, followed by a gunshot. His head was jerked back by a man who put a gun to his head and fired. After shooting Postlethwaite, the gunman threw him to the floor, and shot Maxwell in the head. Postlethwaite recognized the shooter as appellant. He also saw Timothy Foehrenbach, one of appellant's accomplices, poke his head into the room.
Paramedics and police immediately responded to a 9-1-1 call. A Canton police officer asked Postlethwaite who shot him, and he responded, "Dirty John Gillard." Maxwell and Ensign were killed in the shooting.
After the shooting, appellant fled to West Virginia, staying at the home of Ron Webb. Appellant cut his hair and shaved his beard, and identified himself as "Butch Johnson." Webb asked appellant about William Gillard's arrest in Canton for the shooting. Appellant responded, "I pulled the trigger, my brother is taking the fall."
Webb reported appellant's presence to local law enforcement authorities, who thereafter arrested appellant. Appellant again identified himself as "Butch Johnson." Appellant was transported back to Ohio by officers of the Canton Police Department.
Appellant was indicted for the capital murder of Leroy Ensign and Denise Maxwell, and the attempted aggravated murder of Postlethwaite. The case proceeded to jury trial in the Stark County Common Pleas Court. Appellant presented an alibi defense at trial, claiming that he attended a different party on the night in question, and then retired with his girlfriend, Jerri Oney, at her residence. Appellant was convicted as charged. After a mitigation sentencing hearing, appellant was sentenced to death for the killing of Ensign and Maxwell.
Appellant appealed the judgment of conviction to this court. This court reversed and remanded for new trial. State vs. Gillard
(January 21, 1987), Stark App. No. CA-6701, unreported. The Supreme Court of Ohio reversed this court's decision, reinstated appellant's convictions and non-capital sentences, and remanded the case to this court to review the proportionality and appropriateness of the sentence of death. State vs. Gillard
(1988), 40 Ohio St.3d 226.
On remand, this court affirmed the sentences of death, finding that they were neither inappropriate under the facts and circumstances of the case, nor disproportionate with other death sentences from this district. Gillard (June 25, 1990), Stark App. No. CA-6701, unreported. On appeal to the Ohio Supreme Court, the court found that appellant's trial counsel, Louis Martinez, might have labored under a conflict of interest in his representation, and remanded for a hearing to determine whether an actual conflict of interest existed. Gillard (1992), 64 Ohio St.3d 304.
On remand, the trial court found that an actual conflict of interest did not exist, and pursuant to the explicit instructions of the Supreme Court, returned the case to that court for further review. Upon review, the Ohio Supreme Court affirmed the decision, and affirmed the sentences of death. Gillard (1997),78 Ohio St.3d 548.
Appellant thereafter filed the instant action pursuant to R.C. 2953.21 to vacate the judgments of conviction and sentence. The trial court summarily dismissed the petition without a hearing. Appellant appealed that decision to this court, which remanded to the trial court for further review of the record. After conducting such review, the court again dismissed the petition without a hearing. Appellant again appealed to this court, and we again remanded the case to the trial court for further review. The trial court dismissed the petition after the second remand, and appellant filed a second appeal. The last two appeals were consolidated for purposes of this appeal.
 I.
Appellant argues that the court erred in summarily rejecting his claim that the State withheld exculpatory evidence in violation of Brady vs. Maryland (963), 373 U.S. 83.
The failure of the prosecution to disclose, upon request, evidence favorable to the accused violates theFourteenth Amendment's due process guarantee of a fair trial, when the evidence is material to either guilt or to punishment, irrespective of the good or bad faith of the prosecution. Id. at 87. Undisclosed evidence is material for purposes of the Brady
rule only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. United States vs. Bagley
(1985), 473 U.S. 667, 682. A reasonable probability is a probability sufficient to undermine confidence in the outcome.Id.
Appellant claims that the State improperly withheld Postlethwaite's statement to Guy Ensign, several taped interviews of Ronald Postlethwaite, an interview of Bill Gillard conducted at the Guernsey County Jail, a statement of Ronald Webb, and a statement of Donald Gorby. As to these items, appellant has not demonstrated their existence and possession by the State, nor has appellant demonstrated that any of these items contained exculpatory material evidence.
Appellant claims that the State improperly withheld statements of Tim Hendricks and Walter Lamb, and a police report containing a statement Postlethwaite made to Lamb, in which the witnesses claim that Postlethwaite told them "Gillard" was the shooter. Appellant claims this evidence is exculpatory, as he did not identify the shooters specifically as "John" Gillard, as apposed to his brother "William" Gillard. The statement that Gillard was the shooter, as opposed to John Gillard, is not exculpatory. Its value for impeachment purposes would have been marginal at best. The evidence is not material and exculpatory in nature.
Appellant argues that the State improperly withheld a statement of Johnny Morris, in which Morris says he spoke to Postlethwaite when he discovered the bodies. Appellant claims this would have been useful for impeachment purposes, as Postlethwaite did not mention speaking to Morris. Again, this statement is of little impeachment value for Postlethwaite's testimony, as it does not relate to issues of guilt or innocence, and does not directly contradict any testimony.
Appellant argues that the State should have given him the police report containing Postlethwaite's statement to police that John Gillard shot him. Obviously, this evidence would be inculpatory in nature, rather than exculpatory, as it was consistent with Postlethwaite's testimony at trial.
Appellant argues that the State improperly withheld a taped interview of Postlethwaite in which he says that he was unaware of the details of the prior fight between William Gillard and Guy Ensign, and would have talk to other party goers to find out what happened. Appellant claims that this statement demonstrates that Postlethwaite relied on other party-goers for details as to what happened at the party. Postlethwaite's knowledge, or lack thereof, of the details of the fight appellant's brother had with Ensign is irrelevant to his identification of John Gillard as the man who shot him later in the evening. This was not material exculpatory evidence.
Appellant argues that the State should have disclosed a police interview with David Richey. Richey told police that William Gillard was trying to get out of town after the shooting, and called him after being arrested in an attempt to relay a message to appellant that he was in jail. Appellant argues that William Gillard's plan to flee provides evidence of his guilt, and corroborates appellant's story that he went to West Virginia for the purpose of getting Bill an attorney. This evidence is merely corroborative in nature, and is not exculpatory. This statement was not material, as it did not directly relate to any of the issues concerning the shooting.
Appellant argues that the State should have disclosed a police statement of Tim Steph, which contradicted his trial testimony concerning a fight which took place in his bar, several weeks prior to the shooting, involving John Gillard. The statement had no relation to guilt or innocence, and its sole value would have been for impeachment purpose on an issue wholly collateral to the murders. Appellant has not demonstrated that this was material evidence.
Appellant argues that the State should have disclosed Polaroid photographs of appellant, which were taken in West Virginia, before his transportation back to Canton. Appellant argues that these photographs were relevant to his defense of misidentification of the shooter, as they would show what he looked like near the time of the shooting. The evidence at trial demonstrated that while in West Virginia, appellant changed his appearance by cutting his hair and shaving his beard. The photographs, therefore, would not have accurately reflected appellant's appearance on the day of the shooting, and could not have been used by appellant to demonstrate his appearance on January 1, 1985. In addition, appellant has not demonstrated that these photographs were in the possession of the State.
Appellant argues that the State improperly withheld a taped interview with Ronald Webb, in which he stated that he went to the police because appellant had the hots for his wife. Appellant has not demonstrated that this statement is exculpatory in nature. The evidence is of very minimal impeachment value, as it merely explains Webb's motivation for revealing Gillard's whereabouts to the police.
Appellant argues that the State withheld a police report containing statements of Tracie and Melissa Price, which supported his alibi. They told police that appellant and his girlfriend were at a New Year's party at their house until 5:00 A.M. The shooting took place at 4:45 A.M. Appellant has not demonstrated prejudice, as the Prices testified in his behalf in support of his alibi at trial. This evidence merely repeated the alibi evidence already within the possession of appellant. In addition, the Prices provided exculpatory evidence, as Tracie Price told police that he did not come forward with his alibi information because he believed that possibly the newspapers incorrectly reported the time of the shooting, and appellant was, in fact, guilty. In addition, Melissa Price told the police that she heard appellant talking about a fight with Leroy Ensign over a beating Ensign perpetrated upon a friend of his.
Finally, appellant argues that the State improperly withheld a letter to Tim Hendricks from the Canton Law Department, regarding problems with Hendricks' threatening witnesses in the case. This letter was not in any way exculpatory.
The first Assignment of Error is overruled.
 II.
In his second Assignment of Error, appellant argues that counsel was ineffective for failing to request the appointment of an expert in eyewitness identification, and for failing to request a jury instruction concerning the potential unreliability of eyewitness testimony.
In order to demonstrate that counsel was ineffective, the defendant must show that counsel's performance fell below an objective standard of reasonable representation, and he was prejudiced by such performance. Strickland vs. Washington (1984),466 U.S. 668; State vs. Bradley (1989), 42 Ohio St.3d 136, cert.denied, (1990), 497 U.S. 1011. To demonstrate prejudice, the defendant must show that had counsel not erred, there is a reasonable probability that the result of the proceeding would have been different. Id.
Appointment of Expert: Appellant retained trial counsel. Therefore, it is not clear that appellant would have been entitled to the appointment of an expert at State expense, as he was not indigent. Further, the expert testimony concerning credibility of identification testimony of a particular witness is inadmissible under Evid.R. 702, absent a showing that the witness suffers from a mental or physical impairment which would affect the witness' ability to observe or recall events. E.g., State vs. Buell
(1986), 22 Ohio St.3d 124, paragraph two of the syllabus, cert.denied, (1986), 479 U.S. 871. Therefore, it is doubtful that expert testimony would have been admissible on the issue of eyewitness identification. Further, had such testimony been presented, appellant has not demonstrated that he would have been acquitted. Postlethwaite knew both appellant and his brother for a period of time before the incident in question. Therefore, this is not a case of a stranger identification, under the stress of a traumatic incident, but rather, an identification by a person familiar with appellant.
Jury Instruction: Under the doctrine of res judicata, a final judgment of conviction bars a defendant from raising and litigating in any proceeding except an appeal from that judgment, any defense or claimed lack of due process that was raised, or could have been raised, by the defendant at trial, or on direct appeal. State vs. Perry (1967), 10 Ohio St.2d 175, paragraph nine of the syllabus. Since appellant could have challenged the failure to give the proposed jury instruction by way of an ineffective assistance of counsel claim on direct appeal, the claim is clearly res judicata. Appellant attempts to circumvent this rule by claiming that he is relying on evidence outside of the record. This is without merit. Appellant clearly could have raised this issue on direct appeal, as a determination concerning jury instructions could have been made based solely upon the record on appeal. Counsel's ineffectiveness for failing to request an instruction also could be determined solely on the record or direct appeal.
The second Assignment of Error is overruled.
 III.
Appellant argues that the excessive security measures utilized by the trial court during the original trial stripped him of his presumption of innocence, thereby denying him a fair trial.
In order to show that a defendant was denied a fair trial as a result of the security measures adopted by the trial court, the defendant must demonstrate that the measures were either inherently prejudicial, or caused actual prejudice. Holbrook vs.Flynn (1986), 475 U.S. 560, 569. The court positioned one uniformed and armed police officer behind appellant throughout the trial, while another officer sat between appellant and the trial judge. Appellant has made no demonstration of actual prejudice, nor has he demonstrated that the measures were inherently prejudicial. This was a death penalty case, and a jury would reasonably expect minimal security measures in the courtroom. Further, appellant could have raised this issue at trial, or on direct appeal, and the issue is, therefore, res judicata.
The third Assignment of Error is overruled.
 IV.
Appellant argues that the court erred in summarily rejecting his claim that death by electrocution is cruel and unusual punishment.
This claim is res judicata, as appellant could have challenged the method of execution on direct appeal to the Court of Appeals or the Ohio Supreme Court.
Appellant argues that under evolving standards of decency, this claim is now cognizable for the first time in this post-conviction proceeding. Appellant bases this argument on his conclusion that four Justices of the United States Supreme Court expressed views in March of this year that the question of death by electrocution should be reviewed under contemporary standards.Remeta vs. Florida (March 30, 1998), 1998 WL 141409. However, neither the Ohio Supreme Court, nor the United States Supreme Court has undertaken to change the long-standing precedent that death by electrocution is not cruel and unusual. E.g., In Re:Kemmler (1890), 136 U.S. 436; State of Louisiana, ex rel. Francisvs. Resweber (1947), 329 U.S. 459, 467; Glass vs. Louisiana
(1985), 471 U.S. 1080, 1081.
The fourth Assignment of Error is overruled.
 V.
Appellant argues that the court erred in failing to afford him an evidentiary hearing on his petition for post-conviction relief. Appellant argues that the claims raised in the petition, and argued in this appeal, warranted a hearing.
R.C. 2953.21(C) provides that before granting a hearing, the court shall determine whether there are substantive grounds for relief. The petitioner bears the burden of specifically demonstrating prejudice, before a hearing is warranted. E.g.,State vs. Jackson (1980), 64 Ohio St.2d 107. In addition, the claims must rely upon evidence outside the record in order to avoid the doctrine of res judicata, as outlined in Perry, supra.
Appellant did not satisfy the burden of providing sufficient evidentiary materials to establish that his claims were meritorious, thereby warranting a hearing. None of appellant's claims, if factually true, have legal merit. First, as discussed in Assignment of Error I. above, appellant did not make the requisite showing that Brady evidence existed, and was not disclosed to appellant during trial proceedings. As discussed in Assignment of Error II., appellant did not make the requisite showing of ineffective assistance of counsel pursuant toStrickland, concerning the appointment of an expert on eyewitness identification. The issue of failure to request a jury instruction is clearly res judicata. Appellant failed to make a showing that excessive security denied him a fair trial. Electrocution is not cruel and unusual punishment as a matter of law. As appellant failed to meet the threshold burden of asserting claims that, if true, would entitle him to the requested relief.
The fifth Assignment of Error is overruled.
 VI.
Appellant argues that the court incorrectly applied the doctrine of res judicata to the instant case. Appellant also argues that the defense of res judicata cannot be raised in the context of a Civ.R. 12(B)(6) motion to dismiss.
As discussed in previous Assignments of Error, the court properly applied the doctrine of res judicata to many of appellant's claims.
Although the doctrine of res judicata may not be used as a grounds for a Civ.R. 12(B) motion to dismiss, it is a proper basis for a court to find that a defendant has failed to state a claim upon which relief can be granted in an R.C. 2953.21(C) proceeding.State vs. Joseph (July 17, 1997), Allen App. No. 1-96-90, unreported. Although a motion for post-conviction relief is a civil case, the case is peculiarly governed by the statutory procedure set out in R.C. 2953.21. Unlike an ordinary civil lawsuit, the defendant is required to support his claims for relief with evidentiary material at the time he files the petition. Therefore, unlike a civil case, where the court has before it only the complaint on a motion to dismiss, the court reviewing a post-conviction relief petition has before it evidentiary material and the record, from which it is required to make a determination as to the necessity of a hearing. The defense of res judicata is, therefore, proper basis for dismissal of a claim pursuant to R.C. 2953.21(C).
The sixth Assignment of Error is overruled.
 VII.
Appellant argues that the court erred in failing to provide him with discovery beyond that required by Crim.R. 16, and in accordance with the broad discovery provisions accorded by the Civil Rules. R.C. 2953.21(C) expressly provides that the initial determination of whether a post-conviction petition states substantive grounds for relief is to be made based upon the petition and any supporting affidavits, together with the case files and records. Therefore, a petitioner for post-conviction relief is not entitled to discovery during the initial stages of a post-conviction proceedings. State vs. Loza (October 13, 1997), Butler App. No. CA96-10-214, unreported, page 6. Accord, State vsBenner (August 27, 1997), Summit App. No. 18094, unreported; Statevs. Poindexter (August 29, 1997), Hamilton App. No. C-960780, unreported; State vs. Webb (October 20, 1997), Clermont App. No. CA96-12-108, unreported.
The seventh Assignment of Error is overruled.
 VIII.
Appellant argues that Ohio's post-conviction relief scheme, embodied in R.C. 2953.21 et seq., is unconstitutional, as it does not provide capital petitioners with adequate safeguards of review. Appellant reasons that the remedy must be inadequate, as relief is rarely, if ever, granted.
Appellant has not gone beyond mere conclusory allegations that the process is inadequate. Appellant has not demonstrated that Ohio's post-conviction relief scheme is unconstitutional. See, State vs. Sklenar (1991), 71 Ohio App.3d 444, 449 (R.C.2953.21 is not unconstitutional); State vs. Fox (May 16, 1997), Wood App. No. WD-96-031, unreported (claim that post-conviction relief statute is inadequate, as relief is never granted, is not well-taken).
The eighth Assignment of Error is overruled.
 IX.
Appellant argues that the cumulative effect of the alleged errors outlined in his brief warrant the reversal of the trial court's judgment, and a remand to the trial court for further proceedings. As none of appellant's claims has legal merit, the cumulative effect argument is facially without merit.
The ninth Assignment of Error is overruled.
The judgment of the Stark County Common Pleas Court is affirmed.
By: Reader, J., Farmer, P. J. and Hoffman, J. concur.
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Stark County Common Pleas Court is affirmed. Costs to appellant.