OPINION
{¶ 1} Defendant-appellant, Sedrick Franklin, appeals the decision of the Butler County Court of Common Pleas dismissing his petition for postconviction relief. We affirm the trial court's decision.
 {¶ 2} On July 5, 2000, Darrell Wyatt approached Toni Bundy in order to purchase crack cocaine from her at her house in Hamilton, Ohio. Wyatt had purchased crack from Bundy previously in the day and was returning for more. As Wyatt approached Bundy's premises, Bundy came out of the house with appellant. Appellant said he would give Wyatt a better deal on crack than Bundy. Wyatt gave appellant $40 in exchange for the crack.
 {¶ 3} Wyatt returned to his vehicle and gave the crack to the passenger in his vehicle, Bruce Hennig. Hennig determined that the substance was "fleece," or counterfeit crack. Wyatt went across the street to demand the return of his money from appellant. Appellant was standing next to a truck with passengers in it. When Wyatt approached appellant, Wyatt noticed appellant reach behind his back for something. Wyatt decided to "cut his losses," and ran to his vehicle. When Wyatt turned around, he saw appellant pointing a gun at him. Wyatt entered his vehicle and drove away. Wyatt heard three gunshots and the rear window of his vehicle was shattered. One of the bullets entered the headrest on the passenger side of Wyatt's vehicle. Another of the bullets struck Wyatt's passenger, Hennig, in the head, killing him. Wyatt drove to a nearby store where he called 9-1-1 to report the shooting.
 {¶ 4} Police arrived at the scene to investigate and interviewed appellant. Appellant claimed that he had spent the day at his grandmother's house, that he shot a game of pool at Michael's in Fairfield, that he stopped at the Ramada, and then returned to his grandmother's house. Appellant denied that he was in the area of the shooting.
 {¶ 5} Detective Jim Calhoun then spoke to Bundy. She identified appellant from a photo lineup as the person who sold the "fleece" to Wyatt and fired gunshots at him. Bundy stated that after appellant sold Wyatt the "fake dope," she and appellant walked over to a pickup truck in which her friends, Lennie Riggins, Brandon Jarrett and Shonnie King, were seated. Bundy stated that Wyatt approached appellant and requested the return of his money. Bundy stated that Wyatt then walked back to his vehicle. Bundy then saw appellant pull out a gun, hold it sideways, and point it at Wyatt. Bundy testified at trial that she saw the muzzle flash from the gun fired at Wyatt's vehicle and that she heard three shots fired as Wyatt's vehicle drove away. Bundy told Detective Calhoun that appellant was the only person who had a gun that evening.
 {¶ 6} Lennie Riggins also gave a statement to the police that night. Riggins stated that he witnessed the drug transaction and saw Wyatt confront appellant beside the truck to demand his money back. Riggins stated that he heard three booms and then a thump as appellant jumped into the bed of the pickup truck.
 {¶ 7} Appellant was interviewed again after officers determined that his alibi was not true. Appellant maintained that he did not have a gun in his possession on the night of the shooting.
 {¶ 8} Appellant was tried before a jury and sentenced to 15 years to life in prison. This court affirmed appellant's conviction. State v.Franklin, Butler App. No. CA2001-04-074, 2002-Ohio-3876. Appellant subsequently filed a petition for postconviction relief pursuant to R.C.2953.21. On June 29, 2002, the trial court dismissed appellant's petition, finding that his claims were barred by res judicata. Appellant now appeals the trial court's decision dismissing his postconviction relief petition, assigning two errors.
Assignment of Error No. 1
 {¶ 9} "The trial court erred in finding the claims in Mr. Franklin's petition to vacate or set aside judgment pursuant to R.C.2953.21 are barred by Res Judicata. The trial court's error deprived Mr. Franklin of due process of law as guaranteed by Article I, Section 16 of the Ohio Constitution and the Fifth and Fourteenth Amendments to the United States Constitution."
 {¶ 10} In this assignment of error, appellant argues that the trial court improperly dismissed his postconviction relief petition on res judicata grounds because his petition was supported by material evidence dehors the record.
 {¶ 11} "Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment."State v. Szefcyk, 77 Ohio St.3d 93, 96, 1996-Ohio-337, quoting State v.Perry (1967), 10 Ohio St.2d 175, paragraph nine of the syllabus.
 {¶ 12} The presentation of competent, relevant, and material evidence dehors the record may preclude the application of res judicata.State v. Lawson (1995), 103 Ohio App.3d 307, 315, citing State v. Smith
(1985), 17 Ohio St.3d 98, 101, fn. 1. However, the evidence presented dehors the record must meet some threshold standard of cogency; otherwise it would be too easy to defeat the res judicata doctrine by simply attaching as exhibits evidence which is only marginally significant and does not advance the petitioner's claim beyond mere hypothesis and a desire for further discovery. Lawson, 103 Ohio App.3d at 315, citingState v. Coleman (Mar. 17, 1993), Hamilton App. No. C-900811.
 {¶ 13} On direct appeal of his conviction, appellant argued that his trial counsel, Cornelius Lewis, was ineffective due to a conflict of interest. He argued that because Mr. Lewis represented a witness to the crime, Brandon Jarrett, and advised that witness not to give a statement to police, he was therefore ineffective. According to appellant, if his trial counsel had not advised Jarrett to remain silent, "additional reasons to raise reasonable doubt of [appellant's] involvement in the shooting" may have been revealed. Appellant's argument on direct appeal alluded to the possibility that Jarrett was the shooter, or at least that appellant's trial counsel could have and should have made that argument to the jury.
 {¶ 14} In affirming appellant's conviction, this court rejected appellant's claim of ineffective assistance of counsel based on a conflict of interest. This court found that appellant had only shown a possibility of a conflict of interest and that "the mere possibility of a conflict of interest is insufficient to impugn a criminal conviction." State v.Franklin, Butler CA2001-04-074, 2002-Ohio-3876, at ¶ 15, quotingState v. Manross (1988), 40 Ohio St.3d 180, 182. Additionally, this court found that, given all the evidence presented at trial, appellant did not prove that there was a reasonable probability that the result of the trial would have been different.
 {¶ 15} In his petition for postconviction relief, appellant argued that he was deprived of his Sixth Amendment right to counsel because his trial attorney "labored under a conflict of interest which influenced his basic strategic decisions and affected the adequacy of [appellant's] representation." Appellant argued that due to this conflict of interest, appellant was deprived of the right to call Jarrett as a witness. According to appellant, his counsel could have questioned Jarrett about his drug trafficking, whether he was carrying a gun on the night of the murder, and whether he shot Bruce Hennig. Appellant further argued that his trial counsel should have consulted him regarding "the disadvantages of hiring an attorney with a conflict of interest."
 {¶ 16} Appellant presented evidence dehors the original trial court record in support of his postconviction relief petition. Appellant presented affidavits from the following four people: (1) himself, (2) Jarrett, who was a friend of appellant, (3) his trial counsel, Cornelius Lewis, and (4) James Perry, a criminal law attorney with expertise in ethics and disciplinary issues.
 {¶ 17} In his own affidavit, appellant discussed Mr. Lewis's dealings with Jarrett. Appellant stated that he understood that Mr. Lewis "represented" Jarrett during the police investigation of the murder for which appellant was convicted. According to appellant, Mr. Lewis told him that he accompanied Jarrett to the police station and advised Jarrett not to answer any questions. Appellant provided Mr. Lewis with a list of questions to ask potential witnesses at trial, including Jarrett. According to appellant, Mr. Lewis told him that he would use all the questions except the ones that pertained to Jarrett because Jarrett would not be at the trial. Appellant also stated that Mr. Lewis was in contact with Jarrett throughout the trial because Mr. Lewis would relay messages from Jarrett to appellant. Appellant stated that Mr. Lewis did not discuss "conflict of interest" with him nor did he give appellant any reason to be concerned about his representation of Jarrett.
 {¶ 18} In Jarrett's affidavit, he discussed Mr. Lewis's dealings with him. He stated that he asked Mr. Lewis to accompany him to the police station. According to Jarrett, Mr. Lewis advised him not to make a statement to the police concerning the shooting. Jarrett followed this advice. Jarrett also stated that Mr. Lewis told him to "lay low." Jarrett subsequently moved to Wilberforce, Ohio to study at Central State University. Jarrett stated that he believed Mr. Lewis was attempting to protect him and keep him away from appellant's murder trial. Jarrett did not remember whether he paid Mr. Lewis.
 {¶ 19} In Mr. Lewis's affidavit, he stated that Jarrett's mother asked him to accompany Jarrett to the police station. Mr. Lewis stated that he was not retained as Jarrett's counsel but agreed to accompany Jarrett because he is a friend of Jarrett's family. Mr. Lewis told the police that Jarrett would not be making any statements, after which Mr. Lewis and Jarrett left. Mr. Lewis stated that appellant was aware that Mr. Lewis accompanied Jarrett to the police station. According to Mr. Lewis, appellant never stated that Jarrett was involved in the shooting or the argument over the crack. Mr. Lewis stated that he did not explain to appellant what "conflict of interest" was because he did not believe that any conflict of interest existed. Mr. Lewis maintained that he was not retained by Jarrett prior to or after appellant's trial and that Jarrett was never charged in the case. Mr. Lewis stated that he did not forego any trial strategies on account of advising Jarrett not to speak to police.
 {¶ 20} After reviewing the affidavits of appellant, Jarrett, and Mr. Lewis, in addition to portions of the trial transcript, James Perry concluded in his affidavit that a conflict of interest existed. According to Perry, this conflict affected the adequacy of Mr. Lewis's representation of appellant. Perry stated that Mr. Lewis was obligated either to withdraw from his representation of appellant or obtain appellant's and Jarrett's fully informed consent to multiple representation. Perry's opinion is primarily based on Mr. Lewis's actions in advising Jarrett, a witness to the crime, to remain silent, despite appellant's alleged expectation that Jarrett would be called and questioned as a witness at trial.
 {¶ 21} Appellant raised the "conflict of interest" issue on direct appeal and this court fully addressed appellant's argument in that appeal. See State v. Franklin, Butler CA2001-04-074, 2002-Ohio-3876, at ¶ 16. This court found that the evidence showed only a possibility of conflict and, nevertheless, that appellant was not prejudiced by his trial counsel's interaction with Jarrett. The doctrine of res judicata prevents appellant from now raising the issue in a postconviction relief petition because appellant could have, and, in fact, did raise the exact issue on direct appeal. See Perry, 10 Ohio St.2d at paragraph nine of the syllabus.
 {¶ 22} We now must determine if the evidence presented by appellant dehors the record is sufficient to preclude the application of the res judicata doctrine. In order to preclude the application of the res judicata doctrine, the evidence presented dehors the record must advance appellant's ineffective assistance claim beyond mere hypothesis. See Lawson, 103 Ohio App.3d at 315.
 {¶ 23} In order to establish ineffective assistance of counsel based on a conflict of interest, appellant must show that the conflict of interest actually affected the adequacy of his representation. Cuyler v.Sullivan (1980), 446 U.S. 335, 348-349, 100 S.Ct. 1708. To demonstrate an actual conflict, appellant must show that (1) a viable and plausible alternative defense strategy or tactic might have been pursued, and (2) the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests. State v. Gillard,78 Ohio St.3d 548, 553, 1997-Ohio-183.
 {¶ 24} The evidence presented dehors the record does not advance appellant's ineffective assistance claim beyond mere hypothesis. The affidavits do not demonstrate a viable, plausible defense that appellant's trial counsel could have raised and failed to raise on account of his interaction with Jarrett. The fact that Mr. Lewis may have told Jarrett to "lay low" during the trial, or that appellant may have given Mr. Lewis questions to ask Jarrett if Jarrett were called as a witness, does not affect this conclusion as these facts do not point to a viable, plausible defense that was foregone. The affidavits presented by appellant, like the evidence in the original trial court record, at best establish the possibility of a conflict of interest, which is insufficient for a successful ineffective assistance claim. See State v.Manross (1988), 40 Ohio St.3d 180, 182.
 {¶ 25} Contrary to appellant's contentions, the evidence in the original trial court record and the affidavits do not support a theory that Jarrett was the shooter, and thus that Mr. Lewis failed to present a defense that implicated Jarrett. None of the witnesses' testimony indicates that shots were fired from inside the truck, where all agreed Jarrett was sitting. Wyatt and Bundy testified that appellant was the only person they saw at the scene with a gun. Additionally, Mr. Lewis's affidavit indicates that none of the evidence implicated Jarrett and that appellant never told him that Jarrett was responsible for the shooting. In appellant's own affidavit, he does not state a belief that Jarrett was or might have been the shooter. The only remotely plausible evidence that someone in the truck may have been the shooter was that one of the three shell casings found at the scene was found inside the truck (the other two were found on the street next to the truck). However, given other witnesses' testimony that appellant was standing next to the truck when he fired at the victim, this evidence alone does not point to a viable alternative defense.
 {¶ 26} The trial court did not err in dismissing appellant's petition for postconviction relief on res judicata grounds. Appellant raised this exact "conflict of interest" argument on direct appeal and this court fully addressed that argument. Additionally, the statements in the affidavits do not advance appellant's "conflict of interest" argument beyond mere hypothesis. The affidavits do not show that appellant's trial counsel failed to present a viable, plausible defense because of the alleged conflict of interest. At best, the affidavits, like the evidence in the original trial court record, show a possibility of a conflict, not an actual conflict. Accordingly, appellant's first assignment of error is overruled.
Assignment of Error No. 2
 {¶ 27} "The trial court erred by failing to order an evidentiary hearing regarding the conflict of interest and ineffective assistance of counsel articulated in Mr. Franklin's petition to vacate or set aside judgment pursuant to R.C. 2953.21. The trial court's error deprived Mr. Franklin of due process of law and the right to counsel as guaranteed by Article I, Section 10 and 16 of the Ohio Constitution and Fifth, Sixth
and Fourteenth Amendments to the United States Constitution."
 {¶ 28} In this assignment of error, appellant argues that the trial court should have held an evidentiary hearing on the conflict of interest issue.
 {¶ 29} One who petitions for postconviction relief is not automatically entitled to an evidentiary hearing upon the filing of the petition. State v. Jackson (1980), 64 Ohio St.2d 107, 110. A petition for postconviction relief may be dismissed without an evidentiary hearing when the claims are barred by the doctrine of res judicata. State v. Perry (1967), 10 Ohio St.2d 175; State v.Webb (Oct. 20, 1997), Clermont App. No. CA96-12-108.
 {¶ 30} In resolving appellant's first assignment of error, we determined that the claims made in appellant's postconviction relief petition were barred by res judicata. Because the trial court properly found that appellant's postconviction claims were barred by res judicata, it was not required to hold an evidentiary hearing. Therefore, appellant's second assignment of error is overruled.
Judgment affirmed.
VALEN, P.J., and WALSH, J., concur.