OPINION
{¶ 1} Defendant-appellant Eric J. Murphy appeals his conviction and sentence entered by the Tuscarawas County Court of Common Pleas, on six counts of trafficking in drugs, in violation of R.C. 2925.03, after the trial court found appellant guilty upon his entering pleas of no contest to the charges. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On January 13, 2001, agents of Southeast Narcotics Task Force arrested appellant as part of a sweep of numerous drug dealers identified through undercover investigations in Tuscarawas County, Ohio. A complaint filed in the New Philadelphia Municipal Court charged appellant with felony drug trafficking offenses. The municipal court scheduled a preliminary hearing for January 19, 2001. The day before the hearing, January 18, 2001, the State filed a Motion to Dismiss the Complaint "for the reason that the matter will be presented to the Tuscarawas County Grand Jury."[1] The State sent a copy of the motion to dismiss to appellant at the address he gave the court as his residence, 140 Marlin Lane, SE, New Philadelphia, Ohio, his mother's home. The municipal court dismissed the complaint on January 18, 2001, and sent a copy of the dismissal entry on that date to the Marlin Lane address. Appellant recalled receiving the municipal court's dismissal entry, but could not remember receiving a copy of the State's motion to dismiss.
 {¶ 3} Sometime between his receiving the trial court's dismissal entry and the Grand Jury's indicting him on February 7, 2001, appellant left the State of Ohio. Appellant resided in three or four states for varying periods of time. In August, 2004, appellant was arrested in Georgia and extradited to Ohio. On August 27, 2004, appellant appeared before the trial court for arraignment and entered pleas of not guilty to the charges contained in the indictment. Appellant was released on his own recognizance. The trial court revoked the personal recognizance bond on September 23, 2004, after being advised appellant had left the jurisdiction approximately three weeks earlier, and issued a capias for his arrest. The trial court further learned the address appellant had given as his residence was not the address at which he was residing. Appellant was arrested on the capias on October 13, 2004. The trial court again released appellant on his own recognizance, finding appellant, "apparently, did not understand the requirements/conditions of the Judgment Entry establishing bail * * * i.e., he could not leave the State of Ohio without first receiving permission from the Court to do so." October 27, 2004 Judgment Entry.
 {¶ 4} On January 14, 2005, appellant filed a motion to dismiss, asserting the delay in serving the indictment upon him violated his constitutional rights to a speedy trial. The trial court conducted a hearing on the motion. After the parties filed post-hearing legal memoranda, the trial court overruled appellant's motion, finding appellant failed to establish he was prejudiced by the delay. The trial court memorialized its ruling via Judgment Entry filed March 29, 2005.
 {¶ 5} On April 12, 2005, the scheduled trial date, appellant appeared before the trial court and withdrew his former pleas of not guilty and entered pleas of no contest. Upon accepting appellant's pleas, the trial court found him guilty and deferred sentencing until a pre-sentence investigation report was filed. The trial court subsequently sentenced appellant to an eight month term of incarceration on each of the six counts, and ordered the terms be served concurrently. The trial court suspended all but sixty days of the sentence and placed appellant on supervised community control sanctions for a period of two years. The trial court memorialized the sentence via Judgment Entry filed June 20, 2005.
 {¶ 6} It is from this judgment entry appellant appeals, raising as his sole assignment of error:
 {¶ 7} "I. THE TRIAL COURT ERRED IN NOT DISMISSING THE INDICTMENT DUE TO A SPEEDY TRIAL VIOLATION."
 I {¶ 8} In his sole assignment of error, appellant contends the trial court erred in overruling his Motion to Dismiss the Indictment. Specifically, appellant argues his right to a speedy trial, as guaranteed by the Sixth Amendment of the United States Constitution and Article 1 of the Ohio Constitution, was violated by the delay between his indictment and his arrest.
 {¶ 9} The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." The Sixth Amendment right to a speedy trial applies to state prosecutions by virtue of the Due Process Clause of the Fourteenth Amendment. Klopferv. North Carolina (1967), 386 U.S. 213, 222-223, 87 S.Ct. 988,993, 18 L.Ed.2d 1. Article I, Section 10 of the Ohio Constitution also guarantees an accused the right to a speedy trial.
 {¶ 10} "The Sixth Amendment right to a speedy trial is * * * not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations. The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." State v. Triplett (1997), 78 Ohio St.3d 566, 568
(citing United States v. MacDonald (1982), 456 U.S. 1, 8,102 S.Ct. 1497, 1502, 71 L.Ed.2d 696, 704).
 {¶ 11} In Barker v. Wingo (1972), 407 U.S. 514,92 S.Ct. 2182, 33 L.Ed.2d 101, the United States Supreme Court set forth a four-part test to determine whether the state has violated an accused's right to a speedy trial. The four factors include: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) the prejudice to the defendant. Id. at 530.
 {¶ 12} "The first factor, the length of delay, is a `triggering mechanism,' determining the necessity of inquiry into the other factors. Doggett v. United States (1992),505 U.S. 647, 652, 112 S.Ct. 2686, 2691, 120 L.Ed.2d 520, 528, fn. 1;State v. Triplett (1997), 78 Ohio St.3d 556, 558. This factor involves a dual inquiry. Id. First, a threshold determination is made as to whether the delay was "presumptively prejudicial," triggering the Barker inquiry. Next, the length of the delay is again considered and balanced against the other factors. Id.
 {¶ 13} In this matter, the delay was approximately three and a half years. A delay of more than one year is generally considered "presumptively prejudicial." Id. Accordingly, we find the first factor is met. We, therefore, turn to an analysis of the other factors.
 {¶ 14} Turning to the second Barker factor, we find the record reflects the delay was largely attributable to appellant. Appellant testified he received a copy of the New Philadelphia Municipal Court's Judgment Entry dismissing the matter, but could not remember if he received a copy of the State's Motion to Dismiss, which expressly states the matter would be presented to the Tuscarawas County Grand Jury. These documents were mailed to the same address within a couple of days of each other. Thereafter, appellant contacted his attorney "to find out if there was still anything pending against me at that time." March 1, 2005 Tr. at 37. Appellant conceded before he left Ohio in September, 2001, he had some belief there might be something pending against him.
 {¶ 15} Despite his own actions, appellant argues the State made an insufficient effort to locate him. Appellant explains his mother knew his whereabouts. Additionally, he submits he has a number of family members in the area who would have been able to track him down. The State counters with the fact appellant's mother lied about his whereabouts after his August, 2004 arrest, and reliance on her assistance was questionable. We do not find the State was negligent or lacked diligence in its efforts to locate appellant. The State's inability to locate appellant resulted from appellant's departure from Ohio and frequent relocations within a number of different states.
 {¶ 16} With respect to the third Barker factor, we find appellant timely asserted his right after he was extradited to Ohio. Accordingly, this factor weighs in appellant's favor.
 {¶ 17} The fourth Barker factor is the prejudice to appellant due to the delay. The Barker Court explained prejudice as follows: "Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. * * * Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." Id. at 532. (Footnote omitted.)
 {¶ 18} We find appellant has not established any prejudice from the delay. The State's witnesses consisted of law enforcement officers. The drug transactions were recorded by audio and videotape, and had been preserved during appellant's absence. Additionally, the drugs in question were tested and preserved. Upon his arrest, appellant knew the informant and knew of the drug transactions involved.
 {¶ 19} Based upon the foregoing, we cannot say appellant's right to a speedy trial was violated.
 {¶ 20} Appellant's sole assignment of error is overruled.
 {¶ 21} The judgment of the Tuscarawas County Court of Common Pleas is affirmed.
Hoffman, P.J. Edwards, J. and Boggins, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Tuscarawas County Court of Common Pleas is affirmed.
Costs assessed to the appellant.
[1] The State's Motion to Dismiss was admitted into evidence as Joint Exhibit 2 by the trial court at the hearing on appellant's motion to dismiss.